# Commonwealth *versus* Standard Oil Company.

# Standard Oil Company *versus* Commonwealth.

The Standard Oil Company is a corporation chartered by Ohio' in 1870, with authority " to manufacture petroleum, and to deal in petroleum and its products." During the years from 1872 to 1880, both inclusive, it bought crude petroleum in Pennsylvania through brokers and others, but without making a permanent investment here, and this petroleum was shipped to and refined at its refineries beyond the limits of this state. During certain of the said years, and portions thereof, it owned interests in individual partnerships doing business in Pennsylvania as producers, refiners, or transporters of oil, and also shares of stock in Pennsylvania corporations, and also interests in limited partnerships formed under the Act of June 2d, 1874, doing business in Pennsylvania as producers, refiners, or transporters of oil.

It never received any special authority to transact business in Pennsylvania. During the said years it declared dividends varying from 15 per cent. to upwards of 100 per cent. per annum, calculated upon the amount of its nominal capital at the date of each dividend, but earned by its entire property, which, during all the said years, exceeded in value the amount of its nominal capital stock.

*Held :* 1. That the ownership of interests in individual partnerships doing business as aforesaid did, but that the ownership of shares of stock in Pennsylvania corporations, and of the interests in Pennsylvania limited partnerships, doing business as aforesaid, and the purchases of oil as

| | |
|---|---|
| 101 | 119 |
| 129 | 229 |
| 101 | 119 |
| 145 | 103 |
| 145 | 288 |
| 101 | 119 |
| 150 | 241 |
| 101 | 119 |
| 148 | 605 |
| 151 | 270 |
| 151 | 280 |
| 101 | 119 |
| 188 | 189 |
| 101 | 119 |
| a196 | 179 |
| 101 | 119 |
| 197 | 416 |
| 101 | 119 |
| 201 | 7 |
| 101 | 119 |
| 20 SC | ²213 |
| 20 SC | ⁴218 |
| 101 | 119 |
| 208 | ²507 |
| 101 | 119 |
| 28 SC | 565 |
| 101 | 119 |
| 227 | ⁷183 |
| 41SC³125 | |

[Commonwealth *v.* Standard Oil Co.]

aforesaid, did not, constitute a "doing of business in this commonwealth" so as to subject the Standard Oil Company to taxation under the Acts May 1st 1868, § 4 ; April 24th 1874, § 5; March 20th 1877, § 3; and June 7th 1879, § 4, requiring foreign corporations, inter alia, "doing business in this commonwealth" to pay a certain tax upon their "capital stock."

2. The tax imposed by the said acts is not a franchise or license tax, but is in its nature a tax upon the property and assets of corporations.

3. The power of taxation is limited to subjects within the jurisdiction of the state, and it was not the intent of these Acts to tax the whole capital stock of foreign corporations, irrespective of the place of its investment, but to tax the property of such company, that is, its capital stock, to the extent that it brings such property within the state in the transaction of its business.

4. The Standard Oil Company did not, by any of its transactions above set forth, bring *all* its capital stock into this state actually or constructively.

5. The Standard Oil Company is taxable under the said acts only for the years and portions thereof during which it owned interests in individual partnerships as aforesaid, and upon only so much of its capital stock (at the valuation fixed in this case by the rate per cent. of the dividends made in each year, they being over six per cent. per annum) as represents the proportion which its property and assets, invested in the individual partnerships aforesaid, bore to its entire property and assets during each such year.

6. The Standard Oil Company, being domiciled in Ohio, from which state it cannot migrate, is not taxable upon such portion of its capital stock as represents the shares of stock in Pennsylvania corporations or the interests in the limited partnerships aforesaid. Nor is it taxable upon that portion of its capital stock which represents the capital used in the purchases of oil as aforesaid.

7. Each of the aforesaid Acts of Assembly contained a section imposing a penalty upon any corporation therein named that neglected or refused to make the report therein required; each of such sections was repealed in turn by the succeeding Act before this suit was commenced or any claim made for the tax or penalty accrued under the prior and thereby repealed acts; and although each of the repealing Acts saved the right to collect any tax accrued or accruing under the prior acts prior to its repeal, nevertheless the right to recover the said penalty was gone.

·8. Under the provisions of the act June 7th 1879, § 13, P. L. 119, imposing interest at 12 per cent. per annum upon overdue taxes, the Commonwealth can only claim interest from the time of notice and demand by the auditor-general.

GORDON, TRUNKEY AND STERRETT, JJ., dissent.
Commonwealth *v.* Gloucester Ferry Co., 2 Out. 105, explained.

May 31st 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Dauphin county :* Of May Term 1882, Nos. 73 and 77.

This was, in the court below, an appeal by the Standard Oil

Company, a corporation of the state of Ohio, from a settlement made against it by the auditor-general and state treasurer of Pennsylvania upon the 29th day of April 1881, for tax upon its capital stock, with penalties and interest, for the years ending on the first Mondays of November A. D. 1872, 1873, 1874, 1875, 1876, 1877, 1878, 1879 and 1880; under the Acts of May 1st 1868, P. L. 108; April 24th 1874, P. L. 68; March 20th 1877, P. L. 6, and June 7th 1879, P. L. 112.

The sections of these acts, necessary to an understanding of this case are as follows, viz.:

Section 2 of the Act of May 1st 1868, P. L. 108, in substance, and with certain exceptions, made it the duty of every coporation taxable under the laws of this state to report to the auditor general in November the amount of capital paid in; the date, amount, and the rate per cent., of every dividend made or declared during the year ending the first Monday of November; and if no dividend had been so declared, then an appraisement of the actual cash value of the capital stock, to be made as therein provided, was to be returned to the auditor-general; and § 3 of this Act provided, that in case of the company's neglect or refusal to so furnish such report or appraisement on or before December 31st of each year, ten per cent. should be added to the tax for such year.

Section 4 of this act is as follows: "The capital stock of all companies ... incorporated by ... this commonwealth, or ... any other state, and lawfully doing business in this commonwealth, or that may be hereafter incorporated . . . . shall be subject to and pay a tax into the treasury of the commonwealth annually at the rate of one-half mill for each one per cent. of dividend made or declared by such company; and in case of no dividend being made or declared . . . . then three mills upon a valuation of the capital stock . . . . made in accordance with the provision of the second section;" and section 5 required, inter alia, this tax to be paid into the state treasury before the 15th of January of each succeeding year.

Section 12 of the same Act provided, that in the settlement of accounts for taxes due the commonwealth under the prior sections, interest shall be charged upon the balance due the commonwealth at the rate of 12 per cent. per annum from the time the tax became due to the date of the settlement; and that balances due the commonwealth upon such settlement shall, after sixty days therefrom, bear interest at 12 per cent. per annum until paid.

The Act of April 24th 1874, P. L. 68, 69, by § 11, repealed the 2d, 3d and 4th sections of the Act of 1868, and by §§ 2, 3, 5, 6, 10, substantially re-enacted all the sections of the Act of 1868

hitherto mentioned ; § 10 authorized 12 per cent. interest on the tax due.

The Act of March 20th 1877, P. L. 6, by § 8, repealed §§ 2, 3, 5 and 6 of the Act of 1874, and by §§ 1, 2, 3 and 4, substantially re-enacted them.

The Act of June 7th 1879, P. L. 112, by § 2 required a report; by § 3, imposed a penalty for failure to report; by § 4, imposed a tax, to be paid by January 15th of each year; by § 13, imposed interest at 12 per cent. per annum on taxes from thirty days after they became due, and interest upon the balance appearing due upon any settlement made by the auditor-general and state treasurer from sixty days thereafter, and interest at the same rate upon any judgment recovered upon such settlement, and that payment of such interest should not relieve from penalties for failure to furnish reports or to pay any claim due the state, " Provided, that the auditor-general shall first have sent to such corporation a statement of the amount due"; all of these sections being similar, respectively, so far as this case is concerned, to the 2d, 3d, 4th and 12th sections of the Act of 1868 above described, and to the corresponding sections in the Acts of 1874 and 1877, with the exception of the above quoted proviso in § 13, which for the first time here appears; and by § 18, repealed, inter alia, all laws or parts of laws which are in this Act substantially re-enacted.

In the repealing sections of each of these Acts of 1874, 1877 and 1879 appeared the following or a similar clause : " saving, reserving and excepting unto the commonwealth the right to collect any taxes accrued or accruing under the said (thereby repealed) laws, or parts or sections or any of them, prior to the date of approval of this Act."

While the several sections of the Acts of 1874, 1877 and 1879 imposing a tax upon the capital stock of the corporations therein mentioned are in their nature similar to § 4 of the Act of 1868 above set forth (Catawissa R. R. Co.'s Appeal, 28 P. F. Smith 59), the wording of the latter was in § 5 of the Act of 1874 changed, inter alia, thus : " Every company . . . . doing business in this commonwealth . . . . shall . . . . pay a tax . . . . annually at the rate of one-half mill upon its capital stock for each one per cent. of dividend made or declared;" and by § 3 of the Act of 1877, thus : " Every company . . . . doing business in this commonwealth . . . . shall . . . . pay . . . . a tax to be computed as follows," viz. : if the dividend is six or more per cent. upon the par value of the capital stock, then the tax to be at the rate of one-half mill upon the capital stock for each one per centum of dividends so made or declared ; otherwise, to be at the rate of three mills upon each dollar of a valuation of the cash value of the capital stock made as in said Act provided ; and this lan-

[Commonwealth v. Standard Oil Co.]

guage was continued in the Act of 1879; § 2, of this act, however, requiring that in case of an appraisement of the capital stock being necessary, it should be appraised at its cash value, not less, however than (inter alia) "the value as indicated . . . . by the . . . . dividends declared" . . . .

The settlement as originally made recited that the Standard Oil Company had neglected to furnish the auditor-general of Pennsylvania with reports of the amount of the capital stock and dividends of the said company during the years 1872 to 1880 inclusive, and was, as therein expressed, estimated by the auditor-general and state treasurer upon such reasonable data and information as they found attainable.* The settlement was composed of items similar to the following, viz.:

| | |
|---|---:|
| Estimated tax for the year ending the first Monday of November 1872, . . . . . | $7,500.00 |
| Interest from February 15th 1873 to April 29th 1881, | 7,375.00 |
| Penalty for failure to report, . . . . | 750.00 |
| Total, . . | $15,625.00 |

And amounted, with penalties and interest, to the sum of $3,145,541.64.

From this settlement an appeal was taken to the Common Pleas of Dauphin county, in accordance with the provisions of the Act of March 30th 1811, § 11, 5 Sm. L. 230.

The "specifications of objections" to the said settlement were in substance as follows, viz.: That the amount was estimated, and was not based upon reasonable data, nor were any of the bases of the estimation set forth; that neither the corporation, nor its property, nor its business, was within the jurisdiction of Pennsylvania; nor was it doing business nor employing capital in Pennsylvania within the meaning of the aforesaid Acts; that the tax sought to be imposed would not be "uniform," and would be within Section 1, Art. IX., of the Constitution of Pennsylvania; that if any of the said acts impose a tax upon the Standard Oil Company by reason of purchases of oil by it in Pennsylvania, for shipment out of the state, then such law is void, being in conflict with the Constitution of the United States, and particularly a regulation of commerce and a tax or duty upon exports or imports within the respective limitations contained in Sections 8, 9, 10, Article

---

*For the authority to make and the mode of making settlements for taxes due the state on capital stock, see Act 30 Mar. 1811, 5 Sm. L. 228, Pur. Dig. 1185 to 1191; in certain events an estimated statement is authorized against a person neglecting to furnish his account: § 14, Pur. Dig. 1189.

[Commonwealth *v.* Standard Oil Co.]

I., thereof; that Pennsylvania can in no event, nor were the said Acts intended to, tax more than that proportion of the capital stock of the Standard Oil Company which the amount of its capital permanently employed in Pennsylvania bears to the entire capital of the company, and for so long only as such capital was so used; then followed a statement of the dividends declared for each year, covered by the said settlement, and an averment of the amounts which could legally be charged for each year, even if the entire capital stock was liable; and that the interest and penalties charged were without authority of law, for reasons therein particularly specified.

After this appeal had been filed the company made reports of the dividends declared upon its capital stock during the years covered by the settlement. These reports were accepted by the commonwealth, and upon the trial the claim of the commonwealth was by her attorneys limited to an amount calculated upon the basis of the said reports. This limited claim amounted to $796,642.20, and was composed of the following items, viz.:

| Year. | Dividends declared and amount of capital stock upon which declared. | Tax, ½ mill on capital for each 1 per ct. of dividend. | Interest on tax from Feb. 15 of each year to time of settlement. | Penalty for failure to report, 10 per cent. |
|---|---|---|---|---|
| 1872 | $37\frac{643}{1000}$ per ct. on $1,000,000 | $18,821.63 | $20,327.40 | $1,882.16 |
| 1873 | 15 per cent. on 2,317,400 | 17,380.50 | 16,685.28 | 1,738.05 |
| 1874 | 15 per cent. on 2,390,700 | 17,930.25 | 15,061.41 | 1,793.02 |
| 1875 | 15 per cent. on 3,428,200 | 25,711.50 | 18,512.28 | 2,571.15 |
| 1876 | 15 per cent. on 3,341,900 | 25,064.25 | 15,038.55 | 2,506.42 |
| 1877 | $3,248,650 { on average capital stock, $3,086,575. } | 162,432.50 | 77,967.60 | 16,243.25 |
| 1878 | 25 per cent. on 3,500,000 | 43,750.00 | 15,750.00 | 4,375.00 |
| 1879 | 90 per cent. on 3,500,000 | 157,500.00 | 37,800.00 | 15,750.00 |
| 1880 | 30 per cent. on 3,500,000 | 52,500.00 | 6,300.00 | 5,250.00 |
| | | $521,090.63 | $223,442.52 | $52,109.05 |

The case was tried before the court without the intervention of a jury, as provided by the Act of April 22d 1874.

From the evidence received, the following facts were found by the court (SIMONTON, P. J.):

1. The defendant is an Ohio corporation, chartered in January 1870, with authority to "manufacture petroleum, and to deal in petroleum and its products," having a capital originally of $1,000,000, which was in 1872 increased to $2,500,000, and in 1875 to $3,500,000, paid up in cash or its equivalent. Defendant has never received any special authority from Pennsylvania to transact business here, but is not prohibited by its charter from so doing.

2. Defendant has, during all the years embraced in the settlement, owned and operated oil refineries beyond the limits of this state, which, with its other real and personal property situated and owned beyond said limits, have exceeded in value, during all said years, the amount of its nominal capital stock.

3. The dividends declared by defendant from time to time were earned by its entire property assets, and business, but the rate per centum declared was calculated upon the amount of its nominal capital at the date of each dividend.

4. During all the years aforesaid defendant made extensive purchases of crude petroleum in this state, through resident brokers and others, to whom the necessary funds were sent from time to time, without being permanently invested here. This petroleum was shipped to and refined at its refineries beyond the limits of this state.

5. From the first day of August 1873, until the end of the tax year 1878, defendant owned interests in individual partnerships doing business in this state as producers, refiners, or transporters of oil, amounting to the proportions of its whole property and assets following; that is to say: From August 1st 1873, amounting to 4.88 per centum; in 1874, to 14.39 per centum; in 1875, to 13.70 per centum; in 1876, to 8.48 per centum; in 1877, to 5.38 per centum; in 1878, to 2.56 per centum of its entire property and assets.

6. During the tax years 1875 to 1878, inclusive, and for two months of the tax year 1879, defendant owned shares of stock in Pennsylvania corporations amounting to the proportions of its whole property following; that is to say: In 1875, to 22.14 per centum; in 1876, to 13.57 per centum; in 1877, to 24.27 per centum; in 1878, and for two months in 1879, to 23.72 per centum of its entire property and assets.

7. In the tax year 1878, and the two first months of the tax year 1879, defendant owned interests in limited partnership associations formed under the Act of June 2d 1874, and doing business in Pennsylvania as producers, refiners, or transporters of oil, amounting to 2 7-10 per centum of all its property and assets; and said corporations and limited partnerships have been duly taxed, and have paid the taxes due from them to the Commonwealth.

8. From 1874 to 1878, inclusive, a varying but comparatively small proportion of the shares of the capital stock of the defendant were owned by residents of this state.

9. Dividends were declared and paid by the defendant as follows:

In 1872 one dividend of 37 643-1000 per centum, and in 1873, one of 15 per centum on $2,317,400; in 1874, one of 15 per centum on $2,390,700; in 1875, one of 15 per centum on

$3,428,200; in 1876, one of 15 per centum on $3,341,900; in 1877, one of 30 per centum, and three of 25 per centum each on $3,500,000; in 1878, one of 25 per centum, on the same amount; in 1879, one of 15, and three of 25 per centum each on the same amount, and in 1880 two of 15 per centum each, all of which were declared and paid outside of this state.

The conclusions of law of the court were as follows:

We are now to ascertain the law of the case by considering the Acts of May 1st 1868, April 24th 1874, March 20th 1877, and June 7th 1879, under which the tax is claimed, in their relation to the facts as above found.

We do not understand that the counsel for the defendant have seriously undertaken to convince us that when it invested a portion of its capital, and engaged in producing, refining, and transporting petroleum in this state, it was not doing business here within the meaning of the taxing Acts. If they had done so, they must necessarily have failed, as the mere statement of the proposition shows; for it 'cannot make any change in the conclusion to add that it was doing this in partnership with others. Therefore we decide, without reference here to the effect which ownership of stock in corporations, or interest in limited partnerships in Pennsylvania, might have upon the question—leaving this point to be determined further on—that the defendant was, during several of the years included in the settlement appealed from, a corporation of another state doing business in this state in the legal sense which brought it within the grasp of the taxing power of the state.

We must therefore proceed to determine the extent to which it is subject to the tax. It is contended, on behalf of the Commonwealth, that the tax is to be imposed according to the letter of the statutes upon all the capital stock of the defendant, while the other side maintain that only so much of the capital stock as is represented by property and assets of the defendant invested and used in Pennsylvania can be taxed.

As is usually the case in legal controversies, the counsel do not differ so much as to the fundamental principles which should govern, as in their application. Both sides recognize the soundness of the proposition laid down by Chief Justice MARSHALL, in McCulloch *v.* State of Maryland, 4 Wheat. 429, that "all subjects over which the sovereign power of a state extends are objects of taxation, but those over which it does not extend are, on the soundest principles, exempt from taxation;" and that, as was said by WOODWARD, J., in Maltby *v.* Reading and Columbia Railroad Company, 2 P. F. S. 146, "There must be jurisdiction over either the property or the person of the owner, else the power cannot be exercised;" and that, as was said in State Tax on Foreign-held Bonds, 15 Wall. 319: "The

power of taxation, however vast in its character and searching it its extent, is necessarily limited to subjects within the jurisdiction of the state; these subjects are persons, property, and business." But the counsel for the Commonwealth contended that in accordance with these recognized and conceded principles, the defendant may be taxed, under the facts of this case, upon its whole capital stock; while defendant's counsel argue that this can be done only by grossly violating these principles, and that, if they be regarded, no more than the proportion of the capital stock represented by property and assets of the corporation invested or used in Pennsylvania can be taxed here.

As these antagonistic views are, to a great degree, based upon, and sought to be sustained by different theories as to the nature and subject of the tax in question, it becomes necessary, in order to determine between them, to ascertain, if possible, precisely what is the nature of this tax, and upon what it is imposed. In the view of the plaintiff it is a tax upon the franchises of the corporation, or, what seems to be considered equivalent if not identical, upon its capital stock abstracted from any relation to any tangible property and assets. Thus, plaintiff says: "This corporation comes into our jurisdiction with its capital stock, for that is part of its organic faculty, and when it is here its purse is here with it." On the other hand, defendant insists that the tax is virtually imposed on its tangible property represented by its capital stock, and that when it comes into this state and engages in business here, it brings just so much of its capital stock as represents the tangible property and assets invested or used here, and that this proportion and no more is subjected to the taxing power of the State. Which theory is the tenable one?

The nature of corporate franchises, as subjects of taxation, is well defined by Mr. Justice CLIFFORD, in Society for Savings *v.* Coite, 6 Wall. 606 : "Corporate franchises are legal estates vested in the corporation itself as soon as it is in esse." And, "unless exempted in terms which amount to a contract, the privileges and franchises of a private corporation are as much the legitimate subject of taxation as any other property within the sovereign power of the State."

The power to tax corporate franchises is, undoubtedly, recognized and acted upon in this State. The test, whether the tax in any given case is a franchise as distinguished from a property tax, would seem, from the authorities, to be that a tax according to a valuation is a tax on property, whereas a tax imposed according to nominal value, or measured by some standard of mere calculation—as contrasted with valuation—fixed by the law itself, may be a franchise tax. Thus, to illustrate, the tax imposed by section seven of Act of April 24th

1874 (P. L., p. 71), was a franchise tax. As stated by AGNEW, C. J., in Kittanning Coal Company *v.* Commonwealth, 29 P. F. S. 104, it was "a tax upon the corporate franchises of the company, measured by its business, to wit: 'By the number of tons of coal mined or purchased and sold by it, and not upon the coal itself.'" Here no valuation was provided for or required; the rate was three cents per ton, without regard to the actual and fluctuating value of the coal. The distinction between a tax of this kind and a tax on capital stock at a valuation, which is there declared to be a tax on property, is clearly pointed out in Bank of Commerce *v.* New York City, 2 Black 620, and Bank Tax Case, 2 Wall. 200, compared with Society for Savings *v.* Coite, 6 Wall. 594, and Provident Institution *v.* Massachusetts, 6 Wall. 611. Tried by the criterion furnished by these cases, the tax on capital stock in question in this case cannot be a franchise tax.

But it is further contended for the Commonwealth, that if this tax be not upon the franchises of the corporation, and even if the subject of the tax be the capital stock of the corporation, it must be treated as a tax upon the capital stock in the abstract, and without relation to the tangible property and assets of the defendant. It is said, "the capital stock of a corporation is not merely different from the shares of stock into which it is divided, but it is also different from the property in which it is invested. The property of a company may be worth only twenty thousand dollars, and yet its capital stock may, if the law has so fixed it, be fifty thousand dollars in amount." And "when a corporation of one State enters another state, it brings with it its entire capital stock." The phrase "capital stock" is, no doubt, sometimes used in statutes, as well as in ordinary speech, in the sense in which it is used in the foregoing quotations from plaintiff's brief. Thus, when the charter of a corporation specifies the amount of capital stock which it is authorized to have, the phrase is used in this sense. So in a statute providing that corporations may borrow money not exceeding the amount of their capital stock, and in other instances which might be given. But this is not the sense in which the terms are ordinarily used, especially in taxing statutes, and certainly not in the taxing acts in question here. The Supreme Court has repeatedly declared that this is a tax on the capital stock according to its value, and has in many cases held the capital stock to be equivalent to the tangible property of the corporation taxed, as had also the Supreme Court of the United States, and the higher courts of most of our sister States. In School Directors *v.* Carlisle Bank, 8 Watts 289, a tax on capital stock is said to be a tax on the property and assets of the bank. And the same in Saving Fund *v.* Yard, 9 Barr 359. And in Lehigh

[Commonwealth v. Standard Oil Co.]

Coal and Navigation Company v. Northampton County, 8 W. & S. 334, it is said to be not only fair, but necessary, to consider the canal and works of the corporation as its capital stock. And in West Chester Gas Company v. County of Chester, 6 Casey 232, the court consider the capital stock and the tangible property identical, and decide, that when not exempt on other grounds, both may be taxed, because "the power of the Legislature to tax twice is ample as to tax once." So, in Lackawanna Iron and Coal Company v. The County of Luzerne, 6 Wright 424, taxation of the capital stock and also of the tangible property is declared to be double taxation, and sustained only on the ground that this is not illegal. In Phœnix Iron Company v. Commonwealth, 9 P. F. S. 104, it is shown that the tax in question here is imposed directly upon the capital stock at a valuation, fixed either by the rate of dividend or by an appraisement of the capital stock at its actual value. This is repeated and confirmed in Lehigh Crane Iron Company v. Commonwealth, 5 P. F. S. 448, where it is said, "it is evident therefore, that the intention of the Legislature was to levy the tax on the capital stock according to its value, and that the dividend of profit earned by the stock was but a means of ascertaining its value;" this, on examination, will be found a very strong case. The corporation had never formally increased its capital stock, but had "from its profits enlarged its business, erected new buildings, &c.," which was held to be a virtual increase of its capital stock. It was further pointed out in this case that a declaration of dividends on nominal capital, as in Citizens' Passenger Railroad Company v. City of Philadelphia, 13 Wright 251, was an attempted evasion of the law. Again, in Commonwealth v. Pittsburgh, Fort Wayne and Chicago Railway Company, 24 P. F. S. 83, the judgment was affirmed for the single reason that the Commonwealth had failed to show that the increase of the number of shares of stock, under the circumstances of the case, arose "from an actual appreciation of the entire property of the corporation." See the offer of testimony in the statement of the case, pages 87 and 88. This case was under the act of May 1st 1868, and it is referred to in Catawissa Company's Appeal, 28 P. F. S. 59, where it is shown that no change is made in the nature of the tax by the act of April 24th 1874. The same doctrine is declared in County of Lackawanna v. First National Bank of Scranton, 9 W. Notes 549, where the court say: "The banking house was a part of the capital of the institution, represented by its shares of stock, and a tax on the par value of the shares was a tax on it."

Finally, so far as our Supreme Court is concerned, the very recent case of the Coatesville Gas Company v. The County of Chester, 10 W. Notes 328; 1 Outerbridge 476, reaffirms the

[Commonwealth *v.* Standard Oil Co.]

principle of identity, under our tax laws, of the capital stock and the tangible property of the corporation in unmistakable language. Mr. Justice MERCUR, delivering the opinion of the court, decides that although the Act of May 14th 1874 declared that the property of the corporation should not be exempt from taxation, yet as no intention to impose double taxation on the company's lot of ground was apparent, the lot could not be taxed as real estate, because it " constitutes a part of the stock of the corporation, which already pays a tax thereon to the Commonwealth," namely, the tax on capital stock. This case is also, in the opinion, distinguished from Chadwick *v.* Magines, 8 W. N. C. 451, on the ground that " the facts in that case were very different from those in this case. There the corporation was not a stock company, and paid no taxes in any form to the state under the corporation tax laws. It was then an attempt to escape all taxation." We will not occupy space to cite the almost numberless cases from other states where the same doctrine is laid down ; we merely add that the ratio decidendi of the cases, 2 Black, 620, and 2 Wal. 200, cited above, was the identity of capital stock and the property of the corporation. Cooley on Taxation 164–5 and notes.

[In view of this array of authoritative decisions, we cannot avoid the conclusion that the tax in question in this case is a tax upon the tangible property of defendant represented by its capital stock, and that a tax on its whole capital stock at the valuation fixed by the dividends declared by the company would be a tax on the whole of its tangible property, most of which, as shown by the findings of facts, has an actual visible situs beyond the bounds of this state.]

Was it the legislative intention thus to tax when these taxing statutes were enacted ? Such an intention will not be presumed, since we may not impute to the legislature, if by any reasonable construction we can avoid it, an intent to exercise a power so arbitrary, even conceding it to exist. The intent cannot be inferred from the generality of the words. The Act of 1844 (Purd. 1380, pl. 147) makes "all personal estate, . . . all mortgages, . . . all shares of stock, . . . all money loaned, etc." taxable, yet it has never been imagined that it intended to tax personal estate, even when owned by citizens of Pennsylvania, if the actual situs of the property was outside of the state ; and money loaned in another state is taxed only by taxing the evidence of the debt which is in the hands of the creditor within the state. Nor has it ever, hitherto, been supposed that any of our corporation taxing acts were intended to tax property situated beyond the jurisdiction of the state. The only question has been, what was the actual situs of the property.

The records of this court, to which all appeals from the set-

tlements for taxes, made by the accounting department, are brought, including numerous opinions by the venerable President Judge who has recently retired, after a long and honorable service, as well as several decisions of the Supreme Court, reviewing these opinions, show that these taxing statutes have always, from the date of the first decision on the subject, in Pennsylvania v. Trenton Bridge Company, 9 Am. L. Reg. (O. S.) 298, until the controversy in this case arose, been construed to tax only so much of the capital stock of corporations as was represented by property of the company invested and used within the state, and this, whether the corporation were a foreign or a domestic corporation. In the case just cited, President Judge PEARSON, after discussing the subject, said : "We are of the opinion that the tax may be properly apportioned in proportion to the amount of property belonging to the corporation within the state." This decision was never reversed, but was adopted by the auditor-general, as the true construction of the statutes, and has ever since, until now, been adhered to. And even to-day, most of the settlements are made on this basis.

In Commonwealth v. Pittsburgh and Connellsville Railroad Company, 2 Pearson 389, the court say, p. 391 : "There is nothing in the case which shows that in making the appraisement of the capital stock, so much of this company's expenditure as was laid in the state of Maryland, was included. We have no right to presume it, as it is contrary to the uniform custom of the department. The appraisement is confined to the value of the investment within the state." In Pittsburgh, Fort Wayne and Chicago Railway Company v. Commonwealth, 16 P. F. S. 73, the learned judge says : "It cannot be pretended that a state can by law impose a tax upon that which is entirely beyond its jurisdiction, or on property to which its laws afford no protection. The custom to assess pro rata has received the sanction of the court in several cases when applied to the stock of corporations." And he proceeds, on p. 77, to cite and discuss some of the prior cases. This case was affirmed by the Supreme Court on the principles laid down by the court below. To the same effect is Commonwealth v. Northern Central Railway Company, 2 Legal Opinion No. 24, for April 13th 1872, where Judge PEARSON says : "It has been the uniform practice in this state to compute the tax on improvements of almost every kind extending from this into other states according to the distance located in each state. This is done on capital stock, gross receipts, money at interest, and almost every tax to which our corporations are subjected . . . The question must be considered settled." The same statement has been made as to the construction of the taxing acts in respect to apportionment in several other opinions of Judge PEARSON, which have not been reported; and several

cases have been decided by him in which the auditor-general and the corporations differed, not as to the principle, but as to the application and working merely of the principle, of apportionment; and in some of these the only question was as to the proper proportion.

After the doctrine of apportionment had been declared by the court in 9 Am. L. Reg. supra, and adopted by the auditor-general, the Legislature in 1868, in 1874, in 1877, and 1879, re-enacted the taxing statutes, without any change in this respect, and we are therefore bound, by a well-settled principle of construction, to assume that it adopted the interpretation theretofore put upon the act: Ex-parte Campbell, L. R. 5 Ch. App. 703; Commonwealth *v.* Hartnett, 3 Gray 450.

[We have therefore no hesitation in coming to the conclusion that the true construction of these taxing acts must confine the imposition of the tax to so much of the capital stock of defendant as was, during the years included in the settlement, represented by property and business of the defendant within the state. What was this proportion? We do not think that the purchases of petroleum, as set forth in the finding of facts, No. 4, was such a " doing business in this state" as was intended by the statutes. The Act of May 1st 1868, seems to use the phrase "go into operation" as synonymous with " doing business," and this must mean more than purchasing supplies in the state through agents. (P. L. 1868, p. 108.) So the Act of June 7th 1879 (P. L. p. 112), enacts that no corporation, chartered by this or any other state, and "doing business" in this Commonwealth, shall " go into operation" without first making certain reports; thus making " doing business" equivalent to "going into operation; and in section 16, p. 120, foreign corporations which do not "invest and use" their capital are required to obtain and pay for a license, thus making " invest and use its capital" another equivalent for " doing business."]
In accordance with this construction, it was held by McKennan, Cir. Justice, that purchasing materials here by a foreign corporation was not doing business in the state within the meaning of the Act of April 22d 1874 (P. L. 108), to prohibit foreign corporations from doing business in Pennsylvania without having known places of business and authorized agents: Missouri Furnace Company *v.* Cochran, 12 Pitts. L. J. (N. S.) 238. The same construction was adopted in Parker Mills *v.* Commissioner of Taxes, 23 N. Y. 242, where an act, providing that all persons, not residents, doing business in the state should be assessed and taxed on sums invested in any manner in said business, was held not to apply to all cases where the goods of a non-resident were sent into the state, and kept in store for sale. [Nor are we able to so see how the defendant can be held lia-

[Commonwealth v. Standard Oil Co.]

ble to taxation on any portion of its capital stock because of the fact that it owned shares of stock and interests in corporations and in limited partnerships in Pennsylvania. We class these together for the reason that in respect to taxation we can see no distinction between them. The taxing Acts treat them as identical.] Lycoming County v. Gamble, 11 Wright 110, shows that "shares of stock and capital stock of a corporation are distinct and different things;" and it is declared in McKeen v. County of Northampton, 13 Wright 519, that the owner of shares of stock has no ownership in the capital stock of the corporation, and is personally taxable in respect of his shares at the place of his domicile, without regard to the residence of the corporation or the location of its capital stock. Hence, the ownership of shares of stock in Pennsylvania corporations by defendant, a citizen of Ohio, could not render its capital stock taxable here; and, besides, these corporations, as the finding shows, pay the tax on their capital stock.

We are therefore constrained to conclude that this tax can be sustained only on so much of the capital stock of the defendant as is represented by the proportion which the part of its property and assets invested in the individual partnerships in Pennsylvania, as stated in the finding of fact, bears to its whole property.

One other point remains to be determined. It is claimed by defendant that even if it be liable for any part of the tax, no penalties nor interest can be collected, for the reason that section 3, Act of May 1st 1868, imposing a penalty for neglect or refusal to report within a given time, was repealed by section 11, Act of April 24th 1874, which it is said was in turn repealed by Act of March 20th 1877, and this by Act of June 7th 1879; and that as only the right to collect taxes accrued and accruing was reserved in each of these repealing sections, the right to collect interest and penalties is lost. We hold that the reservation of the right to collect taxes, under the repealed acts, included within it the right to use all the means provided by the several acts for this purpose, among which were the right to impose penalties for failure to report and to charge interest at 12 per cent. to induce prompt payment, and that defendant is therefore properly chargeable with interest and penalties on so much of the tax as is legally due.

As we have found no tax due under the Act of June 7th 1879, we need not discuss the bearing of this act upon the case.

As this disposes of the whole case, we do not deem it necessary to consider the questions raised by defendant in its specifications of objections, and the argument of the case as to the constitutionality of these taxing statutes. In the view we have

taken of the case no question arises either under the constitution of the state or United States.

The conclusions of law upon the whole case are as follows:

1. Defendant was from August 1st 1873, continuously, until the end of the tax year 1878, a corporation of another state, doing business in this state, within the meaning and intent of the several taxing statutes in force, respectively, during said period.

2. Defendant is not liable to a tax on its whole capital stock for any of the years included in the settlement appealed from in this case; and said settlement, so far as it charges defendant with tax on all its capital stock for any of said year, is erroneous.

3. Defendant is not liable to be taxed for any of said years because of its purchases of petroleum as set forth in finding of fact number 4; and said settlement, so far as it charges defendant with tax because of such purchases, is erroneous.

4. Defendant is not liable to be taxed for any of said years by reason of its ownership of shares of stock in corporations of this state, as set forth in finding of fact number 6 and said settlement, so far as it charges defendant with tax by reason of such ownership, is erroneous.

5. Defendant is not liable to be taxed for any of said years by reason of its ownership of interests in limited partnerships of this state, as set forth in finding of fact number seven and said settlement, so far as it charges defendant with tax because of such ownership, is erroneous.

6. Defendant is taxable, in this case, for each of the tax years and fraction of a year from August 1st 1873, to the end of the tax year 1878, on so much of its capital stock—at the valuation fixed by the dividends made in each of said years, respectively, as set forth in finding of fact number 9—as represents the proportion which its property and assets owned in this state during each of said years, respectively, bore to its whole property and assets, as set forth and finding of fact number 5.

7. Defendant is liable for interest, at 12 per centum per annum, and penalty of 10 per centum on the amount of tax due.

8. The Commonwealth is entitled to recover from defendant in this case the sum of $31,821.04 for tax, interest, and penalties aforesaid, and $1,456.55, attorney-general's commission, amounting in all to $33,277.59, for which sum, with interest from April 3d 1882, judgment is directed to be entered, unless exceptions be filed within the time prescribed by the Act of April 22d 1874.

[Commonwealth *v.* Standard Oil Co.]

NOTE.—The amount of the judgment, viz.: $33,277.59, was arrived at thus, viz.:

| Years and portions thereof of liability to tax. | Amount of tax claimed. See claim presented on the trial, supra. | Proportion investment in Pennsylvania bore to entire property. | Amount of tax for which judgment was given. Being the amount claimed pro-rated according to the investment in Pennsylvania; and as to year 1873, further pro-rated as to portion of year company had such investment. | Interest 12 per cent. from 30 days after tax due, until the date of the settlement by the Auditor-General and State Treasurer. | Penalty for not reporting, 10 per cent. of amount of tax. | Total tax, interest, and penalties due at date of the settlement made April 29, 1881. |
|---|---|---|---|---|---|---|
| 1873 Aug. 1. to first Mon. Nov. = ¾ of tax year | 17,380.50 | × 4.88 per cent. | × ¾ = 212.04 | + Febr. 15, 1874 to Apr. 29, 1881. } 183.34 | + 21.20 | = 416.58 |
| 1874 | 17,930.25 | × 14.39 per cent. | = 2580.16 | + Febr. 15, 1875 to Apr. 29, 1881. } 1901.36 | + 258.02 | = 4739.54 |
| 1875 | 25,711.50 | × 13.70 per cent. | = 3522.47 | + Febr. 15, 1876 to Apr. 29, 1881. } 2200.37 | + 352.25 | = 6075.09 |
| 1876 | 25,064.25 | × 8.48 per cent. | = 2125.49 | + Febr. 15, 1877 to Apr. 29, 1881. } 1072.66 | + 212.55 | = 3410.70 |
| 1877 | 162,432.50 | × 5.38 per cent. | = 8738.87 | + Febr. 15, 1878 to Apr. 29, 1881. } 3361.55 | + 873.88 | = 12974.30 |
| 1878 | 43,750.00 | × 2.56 per cent. | = 1110.00 | + Febr. 15, 1879 to Apr. 29, 1881. } 293.78 | + 111.00 | = 1514.78 |
|  |  |  | 18,289.03 | + 9013.06 | + 1828.90 | = 29,130.99 |

Interest at 12 per cent. from June 29, 1881 (60 days after the settlement made) until April 4, 1882 (the date of this judgment)............................................. 2,690.05

Attorney-General's commission 5 per cent. on $29,130.99 (see note at end of this report)............... 1,456.55

Total.......... $33,277.59

The Commonwealth filed exceptions to the findings of fact and conclusions of law of the court as follows, viz. :

(1) To the second and (2) to the fourth above set forth findings of fact, and (3, 4, 5) to those conclusions of law contained in those parts of the above opinion which are between brackets, and (6) to the second, (7) to the third, (8) to the fourth, (9) to the fifth above set forth and so numbered conclusions of law, and (10) to the judgment.

The Standard Oil Company filed exceptions (1) to the above set forth conclusion of law numbered seven, and (2) that the judgment was not entered in favor of the defendant. These exceptions were filed in accordance with the Act of April 22d 1874, P. L. 109.

The court, SIMONTON, P. J., April 29th 1882, overruled these exceptions and directed judgment to be entered in accordance with the above opinion.

The Commonwealth and the Standard Oil Company each took a writ of error, assigning as error respectively the overruling of their several exceptions to the findings of fact and conclusions of law above set forth.

*Lyman D. Gilbert* and *Robert Snodgrass*, deputy attorney-general, and *Henry W. Palmer*, attorney-general, for the Commonwealth.—The intent is to tax all the capital stock. The acts, in plain words, tax every corporation upon its capital stock ; not a part thereof ; it is not permitted to interpret what needs no interpretation : Potter's Dwarris on Stat. 143 ; Daggett *v.* Everett, 19 Me. 373 ; U. S. *v.* Fisher, 2 Cranch 358, 399. But even if we go out of the act for the intention, it is clear. The Act of 1868 was passed to remedy the discrimination against domestic corporations caused by the omission of foreign corporations from the tax Act of April 12th 1859, and to put both classes on the same plane ; the acts subsequent to 1868 continue its policy ; therefore, as since the Act of 1859 to the present time domestic corporations have paid tax on all their capital stock irrespective of the situs of their property, so it is intended that foreign corporations shall. The cases cited by the court below on this point only decide the state can pro rate the tax according to the situs of the property if she chooses ; with one exception they were cases of railroads, and the policy has been to consider them substantially a separate corporation in each state through which they run, and to pro rate the tax according to the mileage in each state ; in none of these cases was the right, under the acts, to tax all the capital stock raised or decided ; the one exception is the Trenton Bridge Company's Case (C. P.), 9 Am. L. R. (O. S.) 298 ; and there the tax was arbitrarily imposed on half the stock, irrespective of the value

of the property in Pennsylvania. The state cannot be estopped by her officers' action : Del. Div. Canal Co. v. Com., 14 Wr. 399.

The tax is on the corporation for the privilege of doing business in Pennsylvania. The tax on capital stock is distinct from a tax on property in which such stock is invested : 1 Redfield on Railways 117 ; Pierce on Railways 474 ; Burroughs on Taxation, § 83, pp. 164, 166 ; Gordon v. App. Tax Court, 3 How. 143, &c. ; People v. Commissioners, 4 Wall. 244 ; Cooley on Taxation 273, 393. This tax is a franchise tax, as defined by the court below ; for when certain dividends are declared (as was the case here), it is measured by those dividends irrespective of the value of the capital stock or of the property. But the case of Delaware Railroad Tax, 18 Wall. 206, is conclusive ; the words were, " Shall pay one-fourth of one per cent. upon the actual cash value of every share of its capital stock " (which is equivalent to its capital stock) ; that tax was held to be on the corporation, and not on its property. The line of cases relied on in the court below, from School Directors v. Bank, 8 Watts 289, down to Gas Co. v. Chester Co., 1 Out. 476, are ruled on the principle that " the public works of a corporation, used as such, with their necessary appurtenances, are exempt from taxation as real estate." There may be dicta in these and other cases, but that this is a property tax has never been heretofore the point in issue or decided.

The power to impose this tax rests upon Pennsylvania's power to prescribe the conditions of this corporation's entry into Pennsylvania ; this power is undoubted : Bank of Augusta v. Earle, 13 Peters 519 ; Paul v. Virginia, 8 Wallace 168 ; Ducat v. Chicago, 10 Id. 410 ; Doyle v. Ins. Co., 4 Otto 535 ; Cooley on Taxation 44 ; and upon the proposition that a foreign corporation entering the state brings all its capital stock with it. The place where the capital stock is to exist is a matter for the sovereign's decision : Field on Corporations § 516 ; Tappan v. Bank, 19 Wallace 499, 502 ; Cooley on Taxation 44 ; this corporation is here by permission implied in these taxing statutes, and they impliedly require all the capital stock to be here for taxation : Pierce on Railroads 22 ; Railroad Co. v. Whitton, 13 Wallace 284. As to Pennsylvania, this corporation is both foreign and domestic : McGregor v. Erie Railway Co., 35 N. J. L. 115 ; Green's Brice's Ultra Vires 641, n ; it came here as an entity ; jurisdiction of it is jurisdiction of its stock ; it cannot change its chartered amount of stock at the state line.

The Supreme Court of the United States recognized a state's right to impose a tax upon a corporation within its jurisdiction greater than if measured by the corporate property within its limits ; Minot v. Railroad, 18 Wallace 229, 231 ; Erie Railway

Co. *v.* Pennsylvania, 21 Wall. 492 ; Kirtland *v.* Hotchkiss, 10 Otto 491. So has the Supreme Court of Pennsylvania : Commonwealth *v.* Gloucester Ferry Co., 10 W. N. C. 509, and see Ins. Co. of N. A. *v.* Com., 6 Norris 173.

Purchasing oil is doing business in this Commonwealth within the meaning of these tax acts. The court below denied this corporation's tax liability by reason of its purchases of oil, or upon its capital so employed. This corporation is created "to manufacture petroleum, and deal in petroleum and its products ;" it was domiciled here, and doing business here, and is in a different category from a foreigner who merely buys supplies here ; in purchasing oil it was exercising its powers for the purposes of its creation, and was therefore and thereby "lawfully doing business in this Commonwealth ;" that an individual can buy oil without a franchise does not defeat the right to tax the exercise of such a grant by a corporation : Kittanning Coal Co. *v.* Commonwealth, 29 P. F. S. 100.

This tax is not an interference with inter-state commerce. That it may affect the price of articles of commerce is nothing : Nathan *v.* Louisiana, 8 How. 73. We can tax inter-state railroads : State Tax on Gross Receipts, 15 Wall. 284 ; Erie Railway Co. *v.* Pennsylvania, 21 Id. 492 ; Delaware Railroad Tax, 18 Id. 206 ; Railroad *v.* Commonwealth, 16 P. F. S. 73 ; the tax upon gross receipts was held to be " a tax upon the railroad company measured in amount by the extent of its business or the degree to which its franchise is exercised :" State Tax on Gross Receipts, supra. This is not an effort to tax purchases of oil, but the capital stock of companies lawfully doing business in this Commonwealth.

Ownership of shares in Pennsylvania limited partnerships and corporations subject this corporation to this tax. There is no difference between owning shares of a limited and of an ordinary partnership which are confessedly taxable. As to shares in corporations ; supposing they are taxable at the domicile this corporation has acquired a business and taxation domicile here : Commonwealth *v.* Gloucester Ferry Co., 10 Weekly Notes 509. The principle approved in that case will cure all the errors assigned by us.

As to the method followed in pro-rating by the court below. If this tax is to be pro-rated, it should, in conformity with the decisions cited, be pro-rated according to the proportion that the capital invested in the state bears to its nominal capital, not its entire assets and property.

As to penalties for failure to report, and the interest charged. The penalty of ten per cent. for failure to report was imposed by each of the Acts of 1868, 1874, 1877, and 1879, and interest at 12 per cent. for taxes due is authorized by the same acts

irrespective of any notice to the company of the amount due; the proviso to § 13, Act June 7th 1879, P. L. 119, of notice by the auditor-general to the company of the amount due only prevents the running of interest upon the settlement made, which otherwise bore interest from 60 days thereafter.

*M. E. Olmsted, D. T. Watson, S. C. T. Dodd, Lewis C. Cassidy, John J. Pearson* and *Rufus P. Ranney,* for the Standard Oil Company.—We deny the intent as well as the power to tax our entire stock. We deny that the tax is imposed as a condition of our doing business in Pennsylvania. We deny that we brought all our capital stock into Pennsylvania.

The tax is not imposed as a condition upon which our right to do business depends. With certain limitations, we admit the right to impose such conditions, but deny the intent. If interstate comity is to be infringed, it must be by positive and express words : Cowell *v.* Springs Co., 10 Otto 55 ; Christian Union *v.* Yount, 11 Otto 352 ; Ins. Co. *v.* Morse, 20 Wall. 445 ; Story on Conflict of Laws, § 38 ; Merrick *v.* Van Santvoord, 34 N. Y. 208 ; Erie Railroad Co. *v.* State, 31 N. J. L. 543. A tax imposed as a condition of doing business is a license or franchise tax (this species of franchise tax differs from a tax on the franchise as property ; the latter sort of tax is included in a tax upon capital stock at its true value : State Railroad Tax Cases, 2 Otto 603) ; the distinction between a tax as a condition and as a consequence of doing business is apparent ; to be a license tax, it must confer a privilege to do what would otherwise be illegal : Cooley on Taxation 407 ; Burroughs on Taxation, § 48 ; Attorney-General *v.* Bay State Mining Co., 99 Mass. 152 ; Mayor *v.* Charlton, 36 Ga. 462 ; Home Ins. Co. *v.* Augusta, 50 Ga. 537 ; Chilvers *v.* The People, 11 Mich. 49 ; Erie Railroad Co. *v.* The State, 31 N. J. L. 543 ; but we can do business in Pennsylvania by comity ; the acts do not tax us until we are "lawfully doing business in this Commonwealth." As a consequence of our by comity doing business here, our capital stock permanently used here became liable to the capital stock tax. The act of taxing is a recognition of the legal status of the Company : Erie Railroad *v.* The State, 31 N. J. L. 543. The Legislature knew how to impose a license tax : Acts 11th Apr. 1868, P. L. 83 (as to foreign insurance companies), June 7th 1879, § 16 P. L. 120 (as to foreign companies not investing and using their capital here). That this is not a royalty upon the right of doing business appears from the following :—

This tax is imposed upon the actual capital of corporations at its real value. This proposition, and that the capital is valued presumptively by the dividends in certain events, otherwise by

[Commonwealth *v.* Standard Oil Co.]

an actual appraisement of the capital stock, is ruled in Lehigh
Crane Iron Co. *v.* Com., 5 Sm. 448, 451; Phœnix Iron Co. *v.*
Com., 9 Sm. 104; Com. *v.* P. F. W. and C. R. R., 24 Sm. 83 ;
Catawissa R. R. Co.'s App., 28 S. 59 ; Columbia Conduit Co.
*v.* Com., 9 Norris 307; opinion of court below. · That the
nature of the tax changes with the amount of the dividend is
absurd; if dividends of a certain amount are made, the acts pre-
sume the capital to be worth par; if the stated amount of
dividend be not declared, then an actual appraisement is made :
in either case the tax is on the value presumed or appraised of
the capital stock (under the Act of 1879 the stock cannot be
appraised at less than the value indicated by the dividends
declared). The tax in Kittanning Coal Co. *v.* Com. was upon the
corporate franchise of mining coal measured by every ton mined,
irrespective of its value : The Delaware R. R. Tax, 18 Wall.
206, hinged on the words "every share of ;" the shares be-
longed to the stockholders, and not to the company ; it was not
a tax upon capital stock (which does belong to the company) at
a valuation, but upon the company, measured by an arbitrary
standard, to wit, the value of its stockholders' shares.

Tax upon capital stock at a valuation is a property tax. The
cases, Lehigh Crane Iron Co. *v.* Com., 5 P. F. S. 448; State of
N. Y. *v.* Commissioners of Taxes, 2 Black 620 (reversing
People *v.* Commissioners of Taxes, 23 N. Y. 192); Bank Tax
Case, 2 Wall. 200 (reversing People ex rel. *v.* Commissioners, 3
Am. L. R. [N. S.] 535, establish this proposition, and also that
such a tax is not a franchise tax ; so, also, School Directors *v.*
Carlisle Bank, 8 Watts 289; County of Lancaster *v.* Bank, 7
W. N. C. 29, and numerous cases. The case of Hamilton Co.
*v.* Mass., 6 Wall. 632, was based upon the peculiar provision of
the Massachusetts constitution.

The tax being upon property, can only be upon property
within Pennsylvania's jurisdiction : McCulloch *v.* Maryland,
4 Wheat. 429; State Tax on Foreign Bonds, 15 Wall. 319 ; Hays
*v.* Pacific Mail Steamship Co., 17 How. 596; Morgan *v.*
Parham, 16 Wall. 471; Saint Louis *v.* The Ferry Company,
11 Wall. 423; Delaware Tax Case, 18 Wall. 229 ; Railroad Co.
*v.* Jackson, 7 Wall. 262; Hoyt *v.* Sprague, 103 U. S. 630. An
attempt to tax property beyond the jurisdiction would be in con-
flict with a necessary implication of the federal constitution :
McCulloch *v.* Maryland, supra.

There was no intent to tax all our capital stock, irrespective
of its permament use in Pennsylvania. General words in a
statute are to be restrained to subjects within the jurisdiction :
Farnum *v.* Canal Co., 1 Sum. 26; 2 Ohio State 174; 10 Id.
122, 4, thus our acts tax all personal property, &c. ; but this
has never been applied to property outside of Pennsylvania ;

[Commonwealth v. Standard Oil Co.]

the absence of such intent is witnessed (a), by the contemporaneous, uniform, and long continued custom of the accounting officers to pro rate this tax according to the capital used in this state (see opinion of the court below) ; also decisions of the auditor-general for 1878–1880, p. 296 ; such construction "ought not to be overruled without cogent reasons." U. S. v. Moore, 95 U. S. 763 ; Edwards' Lessee v. Darby, 12 Wheaton 210 ; U. S. v. Gilmore, 8 Wall. 330 ; Greeley v. Thompson, 10 How. 225 ; Ins. Co. v. Hoge, 21 How. 66 ; Mathews v. Shores, 24 Ill. 27 ; Graham's App., 1 Dall. 136 ; Steiner v. Cox, 14 Barr 13 ; Goddard v. Gloninger, 5 Watts 209. Such construction must govern : U. S. v. Ship Recorder, 1 Blatch. 218 ; Packard v. Richardson, 17 Mass. 122 ; Sedgwick on Statutes 216 ; (b) by the unreversed decisions of the courts sustaining this custom : Com. v. Trenton Bridge Co., 9 Am. L. R. (O. S.) 298 ; Com. v. P. and C. R. R., 2 Pearson 389, 391 ; P. F. W. & C. Ry. Co. v. Com., 16 P. F. S. 73 ; Com. v. N. C. Ry. Co., 2 Legal Op. No. 24 ; Com. v. C. P. & A. R. R. Co., 5 Casey 370 ; Buffalo & Erie R. R. Co. v. Com., 3 Brewster 374 ; Com. v. Erie R. R. Co., 11 Weekly Notes 89 ; Petroleum Co. v. Com., 25 L. I. 316 ; (c) by the legislative construction ; the Acts of 1868, 1874, 1877, and 1879, were enacted after prior acts taxing capital stock had received the above construction ; this was a legislative adoption of this construction : Tuxbury's App., 67 Me. 267 ; Cota v. Ross, 66 Me. 161 ; Frink v. Pond, 46 N. H. 125 ; Com. v. Harnett, 3 Gray 450 ; Ex parte Cathcart, 5 L. R. Cb. App. 793. Section 16 of the Act of 1879 requires a foreign corporation not investing and using "its capital" in this state, and which does not therefore pay a tax upon its capital under section 4 of that Act, to pay a license tax in order to have an office in this state ; therefore, if "capital" means all the capital, then, unless we use it all in this state, we are not taxable upon any of it.

The assertion of the attorney-general that under the Act of 1859, and subsequent acts, capital stock has been construed to mean all the capital stock, irrespective of the situs of the property, is not sustained by any case or ruling cited or which can be found ; but the contrary has always been ruled when the question was raised. No distinction can be made between railroads and other corporations ; they are all taxed by the same act, in the same section, and with the same words.

The method of pro-rating used by the court below. The proportion used has always been that which the property in the state bears to the entire property. This is sometimes arrived at by considering, in the case of railroads, the number of miles within and without the state ; but where the actual cost of the property is known, that governs. Our capital stock represents

our property; if one-tenth of our property is in Pennsylvania, then we are liable to a tax on one-tenth of our stock : Com. *v.* Corning, Cowanesque and Antrim R. R. Co., No. 9, Nov. T. 1879, C. P., Dauphin county.

Taxes for past years must be imposed in accordance with the uniform custom of those years. The tax must be uniform upon the same class of subjects: Constit. of Penn., 10 Am. L. R. N. S. 163 ; Cooley on Const. Lim. 495, 499, 501 ; Id. on Taxation, 2, 129 ; Hammett *v.* Phil. Co., 16 P. F. S. 150. Not only the rate, but the mode, of assessment must be uniform : Marsh *v.* Supervisors 42 Wis. 502 ; Phila. *v.* Hiles, Id. 527 ; Bank *v.* Hines, 3 Ohio 1 ; Cummings *v.* Bank, 101 U. S. 153 ; Pelton *v.* Bank, Id. 143 ; People *v.* Weaver, 100 U. S. 539.

All our capital stock is not constructively here. An individual domiciled in Ohio does not change his domicile, nor necessarily bring all his capital with him, when he invests some capital and does business in Pennsylvania ; neither does a corporation. Moreover, a corporation cannot change its domicile : Bank of Augusta *v.* Earle ; Paul *v.* Virginia, 8 Wall. 168 ; O. & M. R. R. *v.* Wheeler, 1 Black 286 ; Runyan *v.* Coster's Lessee, 14 Peters 122 ; County of Allegheny *v.* R. R., 51 Pa. 228 ; Ins. Co. *v.* Francis, 11 Wall. 216 ; St. Louis *v.* Ferry Co., 11 Wall. 423. But even if the domicile was changed, the situs of our visible and tangible property in other states would not be changed : Burroughs on Taxation, § 140 ; Story on Conflict of Laws, § 550 ; Hoyt *v.* Commissioners, 23 N. Y. 224 ; Green *v.* Van Buskirk, 5 Wall. 307.

The case of the Com. *v.* Gloucester Ferry Company was decided upon a case stated, where, if anything was due, all was. The question here raised was not then in issue or decided.

The purchases of oil set forth in finding of fact No. 4 by the court do not constitute a doing of business in Pennsylvania within the meaning of the tax acts. The acts use the phrases, " go into operation " and " invest and use its capital " synonymously with that of " doing business in this commonwealth " (see, on this point, opinion of the court below, and cases there cited), and evidently do not include mere purchases of raw material, to be transported out of the state : Bank *v.* Commissioners, 59 N. Y. 40 ; Doty *v.* R. R., 8 Abb. Pr. 427. Purchasing supplies for its extra state refineries is not dealing in petroleum in Pennsylvania. Nor did the funds thus temporarily used obtain a taxation situs in Pennsylvania. As the person must have a domicile within the state in order to be taxed, so the thing must have a situs therein ; property temporarily and for purposes of commerce within the territory, but

[Commonwealth v. Standard Oil Co.]

which has not become incorporated in the personal property of the state, is not taxable by it: Hays v. Pacific S. S. Co., 17 How. 596; Morgan v. Parham, 16 Wall. 471; St. Louis Ferry Co. 11 Wall. 423. Nor are tax acts to be construed as intending a tax upon property temporarily within the state for purposes of commerce or otherwise: Parker v. Commissioners, 23 N. Y. 242; Bank v. Commissioners, 59 N. Y. 40; Hoyt v. Commissioners, 23 N. Y. 224; State v. Engle, 34 N. J. L. 425; State v. Carrigan, 39 N. J. L. 35; N. Y. and Erie R. R. Co. v. Haight, 30 N. J. L. 428; Irvin v. N. O. R. R. Co., 94 Ill. 105; Herron v. Keeran, 59 Ind. 472. To change the situs from one state to another, the change must be permanent, positive, and unequivocal: People v. Commissioners, 64 N. Y. 544. This company is not domiciled here, as we have seen. The domicile of a corporation is the state of its origin: 1 Potter on Corp. § 101; and it cannot migrate: see cases above cited.

Taxation of its capital not having a situs within the state, as a condition or as a consequence of a corporation's engaging in inter-state commerce, is contrary to the federal constitution, see the cases and principles set forth by Green, J., dissentiente, Com. v. Gloucester Ferry Co., 10 W. N. C. 509; Paul v. Virginia; Bank of Augusta v. Earle, 13 Peters 519; Pensacola Tel. Co. v. Western Union Tel. Co, 6 Otto 1.

Nor is the company taxable by reason of its holding, or upon, its shares of stock in Pennsylvania corporations and limited partnerships. Such property has no situs apart from the domicile of the owner: Burroughs on Taxation, § 43; Slaymaker v. Bank, 10 Barr 373; McKeen v. County of Northhampton, 13 Wr. 519; Bonaparte v. Baltimore, Am. L. R. May 1882; State Tax on Foreign-held Bonds, 15 Wall. 300; State v. Ross, 3 Zabriske 517; R. R. Co. v. Porter, 17 Ind. 380; Howe v. Starkweather, 17 Mass. 240; Angell & Ames on Corp. § 560; Potter on Corp. 192. Our unchangeable domicile is where we are created, viz., in Ohio. A limited partnership is practically a corporation. Interests in their stock are put upon same basis with shares of stock in corporations: Act June 2d 1874, P. L. 271; February 18th 1875, P. L. 3.

The charges for penalties for failure to report, and interest at 12 per cent. The court below has allowed penalties of ten per cent. upon the tax found due for each year, for failure to report; and interest at twelve per cent. upon such tax due until the date of settlement; but the sections of the acts imposing these penalties and interest have been repealed; therefore they cannot be recovered: Potter's Dwarris on Statutes 160; Yeaton v. U. S., 5 Cranch 281; Rex v. Justices, 3 Burr. 1456; Rachel v. U. S., 6 Cranch 329; The Irresistible, 7 Wheaton 551; U.

S. *v*. Preston, 3 Peters 57; Pope *v*. Lewis, 4 Ala. 489; Lewis *v*. Foster, 1 N. H. 61; C. J. LANG, in Maryland *v*. B. & O. R. R. Co., 3 How. 534; Norris *v*. Crocker et al., 13 How. 429. The reservations in the repealing acts of the right to collect taxes accrued or accruing under the acts thereby repealed do not save the penalties; penalties do not accrue, taxes do: Commonwealth *v*. Wyoming Canal Co., 14 Wr. 410; Commonwealth *v*. Ebervale Coal Co., 2 Pears. 419; Commonwealth *v*. R. R. Co., Sup. Ct. May 1880. Penal statutes must be strictly construed, and will not be allowed to inflict penalties by implication: Dwarris on Statutes 245, 247, 251, 707, 711; Andrews *v*. U. S., 2 Story 203; Schooner Enterprise, 1 Paine C. C. 32; 1 Bl. Com. 88; Van Valkenburgh *v*. Torrey, 7 Cow. 252; U. S. *v*. Sheldon, 2 Wheat. 119; Myers *v*. Foster, 6 Cow. 567; Daggett *v*. State, 4 Conn. 61; Cone *v*. Bowles, 1 Salk. 205; Fleming *v*. Bailey, 5 East 313; Ferrett *v*. Atwic, 1 Blatch. 150; U. S. *v*. Ten Cases of Shawls, 2 Paine C. C. 162; an act establishing like rates of tolls as in another specified act does not establish the penalties (for taking tolls from exempted persons) imposed in the latter: Jones *v*. Estis, 2 Johns. 379; interest at 12 per cent. is a penalty, and the imposition thereof is not authorized by an act directing certain taxes to be paid " in the manner now directed by law," although the law in existence at the passage of such act imposed such interest on such taxes when overdue: Easton Bank *v*. Commonwealth, 10 Barr 451. Moreover, the proviso in § 13 of June 7th 1879, P. L. 119 (§ 18 of this act having repealed all Acts inconsistent therewith), is a bar to the recovery of interest except so much as has accrued after notice to us of the tax, claimed, which was given on March 31st 1881; even before the Act of 1879, where there was an honest dispute as to the liability to tax claimed, to justify a charge of interest, notice of the claim should have been given: Commonwealth *v*. Ebervale Coal Co., 2 Pears. 419; 10 Norris 47.

Mr. Justice PAXSON delivered the opinion of the court, November 20th 1882.

Each party to this controversy is dissatisfied with the judgment of the court below, and has taken its writ of error. We will first consider the case as presented upon the Commonwealth's writ.

The principal contention is as to the extent the Standard Oil Company is liable to taxation under the several Acts of Assembly taxing foreign corporations " doing business within this Commonwealth." The court below found the fact that the company was doing business here; indeed, it is not seriously denied that it has rendered itself liable to taxation. It was contended on the part of the Commonwealth that according to the letter of the

statutes the tax should be imposed upon all of the capital stock of the company, while on the other side it was urged that only so much of the stock was intended to be taxed as is represented by property of the company invested and used in the state of Pennsylvania.

It has been repeatedly decided, and is settled law, that a tax upon the capital stock of a company is a tax upon its property and assets: Saving Fund v. Yard, 9 Barr 359; Lehigh Coal & Navigation Company v. Northampton County, 8 W. & S. 334; West Chester Gas Co. v. County of Chester, 6 Casey 232; Lackawanna Iron & Coal Co. v. County of Luzerne, 6 Wright 424; New York & Erie R. R. Co. v. Sabin, 2 Casey 242; Erie R. R. Co. v. Com., 16 P. F. S. 84; County of Lackawanna v. The Bank, 13 Norris 221; Coatesville Gas Co. v. Chester County, 1 Outerbridge 476; Phœnix Iron Co. v. The Com., 9 P. F. S. 104; Mutual Ins. Co. v. Supervisors of Erie, 4 N. Y. 442; International Life Ins. Society v. Commissioners, 28 Barb. 318; New Haven v. Bank of New Haven, 31 Conn. 106; Nichols v. New Haven Co., 42 Id. 103; Mechanics' Bank v. Bridges, 30 N. J. 112; State v. Haight, 34 Id. 319; State Bank v. Brackenridge, 7 Blackf. 395; Auditor v. New Albany R. R. Co., 11 Ind. 570; Whitney v. Madison, 23 Id. 331; State v. Hamilton, 5 Id. 310; Michigan R. R. Co. v. Porter, 17 Id. 380; Quincy R. R. Bridge Co. v. Adams, 88 Ill. 615; Hannibal & St. Joseph R. R. Co. v. Shacklett, 30 Mo. 558; Rome Railroad v. Rome, 14 Ga. 275; National Bank v. Com., 9 Wallace 353; Illinois R. R. Tax Cases, 2 Otto 598; Bibb Co. v. Central R. R. Co., 40 Ga. 646; Gordon v. Mayor, 5 Gill 231. Equally well settled is the principle that the power of taxation, however vast in its character and searching in its extent, is necessarily limited to subjects within the jurisdiction of the state; these subjects are persons, property, and business. See State Tax on Foreign-held Bonds, 15 Wallace 319; Maltby v. Reading & Columbia R. R. Co., 2 P. F. S. 146; McCulloch v. State of Maryland, 4 Wheaton 316.

It is undoubtedly competent for the legislature to lay a franchise or license tax upon foreign corporations for the privilege of doing business within this state. The Act of 1868 (P. L. 83), to revise, amend and consolidate the several laws regulating the licensing of foreign insurance companies is such an act. It required a license, and imposed a tax; heavy fines were inflicted upon any such company doing business without a license, and it was made a misdemeanor for any person to act as agent or transact business for an unlicensed company. A license tax is evidently intended as a compensation to the state for the protection which it affords foreign corporations who have an office within its borders for the convenience of its officers, but upon

whose property it could impose no tax because not within its jurisdiction. The tax in this case is in no sense a license tax. The state never granted a license to the Standard Oil Company to do business here. It merely taxes its property, that is, its capital stock, to the extent that it brings such property within its borders in the transaction of its business. It was contended on behalf of the Commonwealth, and pressed with much learning and ability, that when a foreign corporation enters the state to do business, it brings its entire capital stock with it. This position is ingenious, but unsound. It is a fundamental principle that the person must have a domicile in the state in order to be taxed, and the thing must have a situs therein : Hays *v.* Pacific Mail Co., 17 Howard 596 ; Morgan *v.* Parham, 16 Wallace 471 ; St. Louis *v.* The Ferry Co., 11 Wallace 423. Persons and property in transitu cannot be taxed : Hoyt *v.* Commissioners of Taxes, 23 N. Y. 224. The domicil of a corporation is the state of its origin : Potter on Corporations, sec. 10 ; and it cannot migrate to another sovereignty : Bank of Augusta *v.* Earle, 13 Peters 586 ; Paul *v.* Virginia, 8 Wallace 168 ; St. Louis *v.* The Ferry Co., 11 Wallace 423. The domicile of the Standard Oil Company is in the state of Ohio. Being a corporation, it is an invisible, artificial, and intangible thing. When it sent its agents to this state to transact business, it no more entered the state in point of fact than any other foreign corporation, firm or individual who sends an agent here to open an office or branch house. Nor does it bring its capital here constructively. A corporation must be considered as a person, an artificial one, it is true ; and it would be as reasonable to assume that a business firm in Ohio brought its entire capital here, because it sent an agent here to establish a branch of its business, as to hold that the Standard Oil Company by employing certain persons in this state to transact a portion of its business, thereby brought all its property or capital stock within our jurisdiction. There is neither reason nor authority for such a proposition.

To the extent that it brought its property here it is taxable, and no further. An act of assembly must have a reasonable construction. When it says " all " horses, " all " carriages shall be taxed, it does not mean all horses and all carriages in the state of Ohio. It refers to all such things as are within the jurisdiction of the taxing power. Regarding the words " capital stock " in the act of assembly as the equivalent of the property and assets of the corporation, we must construe them to mean so much of the capital stock measured by the property actually brought within the state by the company in the transaction of its business. This construction is in entire accord with the practice heretofore existing in the auditor-general's office, and

[Commonwealth v. Standard Oil Co.]

the repeated decisions of the courts.  It has been distinctly recognized and affirmed in the Com. v. The Trenton Bridge Co., 9 Am. L. Reg. O. S. 298; Com. v. Pittsburg & Connellsville Railroad Co., 2 Pearson 389.  In Pittsburg, Ft. Wayne & Chicago Railway Co. v. The Com., 16 P. F. S. 73, it was said: "It cannot be pretended that a state can by law impose a tax upon that which is entirely beyond its jurisdiction, or on property to which its laws afford no protection.  The custom to assess pro ratâ has received the sanction of the court in several cases when applied to the stock of corporations."  To the same effect are Com. v. C. P. & A. R. R. Co., 5 Casey 370; Buffalo & Erie R. R. Co. v. Com., 3 Brewster 374; Com. v. Erie R. R. Co., 11 W. N. C. 89, and Petroleum Co. v. The Com., 25 Legal Inte. 316. The Com. v. Gloucester Ferry Company, 10 W. N. C. 509, is not in conflict with this view.  That case came up upon a case stated, and the amount of the tax was therein fixed, provided the company should be held liable at all.  My impression is, the tax was upon half the capital stock, the company being a New Jersey corporation engaged in carrying passengers and freight between Philadelphia and Gloucester, N. J., and having an office and wharf at each place.  There was nothing in the case to militate against the apportionment of taxes.  In the Erie Railway case, decided at the same term, it was said by our brother TRUNKEY: "It is conceded that the Act of 1874 does not impose a tax upon the entire stock of the Erie Railway Company; only upon a fair proportion, with reference to so much of the road as is located in Pennsylvania: 11 W. N. C. 89.

Speaking for myself, I doubt the power of the legislature to tax the entire property and assets, i. e., the entire capital stock of a foreign corporation whose necessities compel it to transact a portion of its business, however small, within this state.  I concede the power of the Commonwealth to exclude foreign corporations altogether from her borders; or she may impose a license tax so heavy as practically to amount to the same thing. But great and searching as her taxing power is, I deny that it can tax either persons or property not within its jurisdiction. A foreign corporation has no domicile here, and can have none; hence, it cannot be said to draw to itself the constructive possession of its property located elsewhere.  There are a large number of foreign insurance companies doing business here under license from the state.  Some of them have a very large capital. It is usually invested at the domicile of the company.  If the position of the Commonwealth is correct, she can tax the entire property of the Royal Insurance Company, although the same is located almost wholly in England, or the assets of the New York Mutual, located in New York.  Whether I am correct in this view or not, it is very certain that a sense of its injustice, or

perhaps that courtesy which springs from the comity between the states, has prevented the legislature heretofore from asserting a power of so doubtful a character. We will not impute such a purpose to it now, in the absence of any such clearly expressed intent. It would be the more improper to do so in view of the fact that when the Acts of 1868, 1874, 1877, and 1879, were passed the legislature were perfectly aware of the construction given to similar acts by the auditor-general and by the courts. That they made no change in those acts in this respect is persuasive evidence that they were satisfied with the law as thus construed, and intended to continue it.

We see no error in the conclusion of law which the learned judge arrived at upon his fourth finding of facts. That the purchases of oil in this state by a foreign corporation, for the purpose of shipping to its refineries without the state, is doing business within this state, is a proposition that does not need serious discussion. It is true the charter of the Standard Oil Company authorizes it to deal in oil, but the finding of fact does not include such dealing. On the contrary, the court finds that the petroleum was shipped to and refined at the company's refineries beyond the limits of the state. Thousands of corporations and individuals in other states make their purchases of supplies of raw material here, but it has never been seriously asserted that they were doing business within this state. It has not been the policy of the state at any time, as evidenced by its tax laws, to embarrass the development and sale of her rich products, mineral and agricultural, by levying tolls upon strangers who come here to buy ; and it is not the province of the courts to erect a judicial Chinese wall around the state, which could not fail to affect injuriously the best interests of the people.

Nor do we think the company liable to taxation here upon its shares of stock in Pennsylvania corporations, including limited partnerships. These corporations have already contributed their proportion of the state's burdens. That the capital stock of a corporation is a different thing from shares of stock appears from Lycoming County *v.* Gamble, 11 Wright 110. The capital stock represents the property and assets of the company, which may consist in whole or in part of real estate. The certificates or shares of stock are the evidence of an interest which the holder has in the corporation, and it is well settled that this interest is personal property : Bouvier's Law Dict., 4 Davis, Ab. 670 ; and, as such, follow the person of the owner : McKeen *v.* County of Northampton, 13 Wright 519. It was held in the case last cited that shares of stock were taxable at the domicile of the owner, although the shares were the stock of a corporation of

[Commonwealth *v.* Standard Oil Co.]

another state. It follows necessarily that shares of stock in a Pennsylvania corporation, held by a corporation or individual domiciled in another state, cannot be taxed here. One sufficient reason is, that there is nothing here to tax. The capital stock, that is, the property and assets, are here, and are taxed. But the shares, or certificates of stock, are not here. They are actually, and constructively, at the domicile of the owner, at which place they are subject to taxation by the taxing power of the place. The Standard Oil Company, as before observed, is domiciled in the state of Ohio. It has never been here, for it cannot migrate. It is recognized in this and other states, and has its agents here who attend to its affairs.

We are of opinion that the commonwealth has no occasion to complain of the rulings of the court below, and upon its writ of error the judgment must be affirmed.

It remains to consider the case, as presented upon the writ of error taken out by the Standard Oil Company.

The only important error assigned is, that " the court erred in finding as a conclusion of law that defendant is liable for interest at twelve per centum per annum, and penalty of ten per centum of the amount of tax due."

The third section of the Act of May 1st 1868, P. L. 108, provided that if the officers of corporations taxed under said act should neglect or refuse to furnish the report required by the second section of said Act on or before the 31st day of December, a penalty of ten per centum should be added to and collected with the tax. The commonwealth claimed, and the court below, allowed this penalty. The difficulty in the way of the commonwealth is, that the third section of the Act of 1868, giving the penalty, was repealed before the suit was commenced below or any claim made for either the tax or penalty. The 11th section of the Act of April 24th 1874 (P. L. 68), provided " That all laws or parts of laws inconsistent herewith, and the 1st, 2d, 3d, 4th, 7th, 8th and 9th sections of an act entitled 'an act to revise, amend and consolidate the several laws taxing corporations, brokers and bankers,' approved the first day of May 1868, and the fourth section of an act entitled 'an act relating to the revenues of the commonwealth,' approved the 21st day of March 1873, be, and the same is hereby repealed, saving, reserving and excepting unto the commonwealth the right to collect any taxes accrued or accruing under any of said sections or acts, prior to the repeal of the same. In like manner the 3d section of the Act of April 24th 1874, imposing a similar penalty, was repealed with others by the 8th section of the Act of March 20th 1877 (P. L. 6) ; and the second section of the Act of 1877, imposing a like penalty, was repealed by the

18th section of June 7th 1879, P. L. 112. Each of the last named repealing Acts contained a similar reservation to the one in the Act of 1874, as to the right of the Commonwealth to collect all taxes accrued or accruing prior to the repeal.

The law upon this state of facts is well settled. The Commonwealth reserved the right to collect this tax only. The right to the penalties was gone. No judgment can be rendered in any suit for a penalty after the repeal of the Act by which it was imposed. The repeal of a statute puts an end to all suits founded upon it, even though commenced before the date of the repeal: Rex *v.* Justices of London, 3 Burr. 456; Schooner Rachel *v.* United States, 6 Cranch 329; The Irresistible, 7 Wheaton 551; United States *v.* Preston, 3 Peters 57; Pope *v.* Lewis, 4 Alabama 489; Lewis *v.* Foster, 1 New Hampshire 61. The repeal of an act imposing a penalty is itself a remission: Maryland *v.* Balt. & O. R. R. Co., 3 Howard 534; Norris *v.* Crocker, 13 Id. 429. In reserving, in the repealing Acts, all taxes accrued and accruing the Commonwealth reserved the right to employ all the ordinary remedies for their collection. But the penalties are in no sense such remedy. They are merely a punishment for the omission to make the reports required by law. The state might have also excepted the penalties from the operation of the repealing Acts, but did not do so. Penal statutes must be construed strictly, and never extended by implication: Andrews *v.* United States, 2 Story 203. When there is such an ambiguity in a penal statute as to leave reasonable doubt of its meaning, it is the duty of a court not to inflict the penalty: The Schooner Enterprise, 1 Paine C. Ct. 32.

The charge of interest at 12 per cent. is also a penalty, and is governed by the same rules. Easton Bank *v.* The Com., 10 Barr 451, would seem to be conclusive upon this branch of the case.

The Act of March 20th 1877, contains no provision for the addition of any interest to the taxes imposed. The 13th section of the Act of June 7th 1879 imposed interest at 12 per cent. for non-payment of the tax, but there is a strong implication from the proviso of the Act that the corporation shall be in default after "the auditor-general shall first have sent to such corporation a statement of amount due."

We are of opinion that the commonwealth can only claim interest from the time of notice and demand by the auditor-general.

The judgment is reversed upon the Standard Oil Company's writ of error, and a procedendo awarded.

GORDON, TRUNKEY, and STERRETT, JJ., dissented.

June 9th 1883. Henry W. Palmer, Attorney-General, on behalf of the Commonwealth, made a motion for an order for a re-argument and assigned the following reasons, viz. :

[Commonwealth *v.* Standard Oil Co.]

First, as to money invested in Limited Partnerships.

In the opinion of the court interests in such limited partnerships in Pennsylvania are treated as shares. of stock in Pennsylvania corporations; such shares were held not taxable in defendants' hands, because (1) these Pennsylvania corporations pay taxes; and (2) there is nothing here to tax; neither of these reasons apply to the case of limited partnerships; (1) they were not taxed prior to 1879; (2) nor are those for manufacturing and mercantile purposes taxed by that act; (3) there is no such thing as a share of stock in limited partnerships; and (4) the right of the state to tax the money invested in general partnership is granted, and she should have the same right as to money invested in limited partnerships; the two kinds of partnerships are identical, with the exception of a limited liability.

Second, as to money invested in oil purchased here and transported beyond our borders for refinement.

The defendant is treated as though it did no business in the state besides purchasing oil for export: the fact that it held real estate and was a refiner, transporter and manufacturer in the state was overlooked; if the oil bought here had been refined here, the capital so invested would have been taxable; and as to the taxes on the investment here, it is immaterial what was done with the oil in which the capital was invested.

The court is of the opinion that the findings of fact do not include a dealing in oil here, but it was found that this company owned interests in refineries engaged in purchasing, refining and selling oil. Surely this was exercising the corporate functions " to deal in oil'" in this state.

Third, as to interest and penalties.

In the case of the Pacific and Atlantic Telegraph Co. *v.* Com., 3 Brews. 517, the supreme court held that taxes accrued under a repealed statute, including interest and penalties, could be collected after the repeal, without a saving clause, in the absence of a clearly expressed legislative intent that such taxes were to be forgiven : this case was not brought to the attention of this court.

Fourth. If the principle that the tax on capital is a tax on tangible property, and that the state cannot by a tax on capital indirectly tax property not within its borders, is correctly applied, then our system of taxation on Pennsylvania corporations owning no tangible property in the state is erroneous. The principles upon which our tax system is founded, and $700,000, are involved in this case.

January 22d 1883.   Per Curiam.   Motion denied.

Note. On January 24th 1883, the Court of Common Pleas of Dauphin county, on motion of Robert Snodgrass, Esq., deputy attorney-general, ordered the judgment, theretofore entered in this case, to be corrected by

101 | 152
153 | 616

---

striking out the interest accrued prior to the settlement and the penalties, in accordance with the above opinion of the Supreme Court. Upon the same day the amount was liquidated by the prothonotary at the sum of $22,660.10 and costs; and this judgment was *eo die* paid by the company and satisfied of record by the direction of the attorney-general. This judgment so satisfied was composed of the following items, viz.:

| | |
|---|---:|
| Total amount of taxes; same as in original judgment | $18,289.03 |
| Interest at 12 per cent. from June 29th 1881 (60 days from the settlement by the accounting officers), to January 24th 1883, as per Act June 7th 1879 | 3,456.62 |
| Attorney-general's Commissions 5 per cent. on $18,289.03. In the judgment originally made these were by mistake calculated on the total of taxes interest and penalties thus found due; see Act 7th Apr. 1870, § 3 P. L. 57 | 914.45 |
| | $22,660.10 |
| Costs | 19.70 |
| Total | $22,679.80 |