## COMMONWEALTH v. AM. BELL TELEPH. CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF DAUPHIN COUNTY.

Argued June 3, 1889—Decided June 28, 1889.
[To be reported.]

(*a*) The American Bell Telephone Company, a Massachusetts corpora-
tion, having its principal office or place of business in Boston, and no
office, agent, or place of business in Pennsylvania, by contracts made
in Boston leased to Pennsylvania corporations telephones manufactured
and owned by it, with a license to use the same.

(*b*) The Pennsylvania corporations, the lessees, constructed and owned the
necessary lines of wire, switches, switch-boards and other apparatus,
except the telephones themselves, requisite for their business; main-
tained their own offices, employed their own officers and agents, and
paid their rentals at Boston; the telephone company having no capital
or property in Pennsylvania except the rented instruments.

(*c*) The telephone company transacted no business in Pennsylvania, and
the contracts provided that the telephones should remain the property
of the lessor; that rentals should be paid for them whether used or not;
that their use should be subject to certain restrictions, and that upon
certain breaches of the agreement, the lessor might take possession of
and operate the telephones.

1. Although the telephone instruments, as such, might be within the tax-
ing power of the commonwealth, yet said telephone company is not
liable, under § 4, act of June 7, 1879, P. L. 112, to a tax upon its capi-
tal stock, either as doing business or having any portion of its capital
stock employed within this commonwealth: Commonwealth v. Stand-
ard Oil Co., 101 Pa. 119.

Before PAXSON, C. J., GREEN, WILLIAMS, McCOLLUM and
MITCHELL, JJ.

Statement of Facts.

No. 33 May Term 1888, Sup. Ct.; court below, No. 395 August Term 1885, C. P.

On February 19, 1885, the auditor general stated the following account against the American Bell Telephone Company for taxes for the year 1884, which was approved by the state treasurer April 2, 1885:

For tax on capital stock, per acts of March 20, 1877, and June 7, 1879, for the year ending first Monday of November, 1884, as per report herewith filed.

| | |
|---|---:|
| Average number of telephones in use during year, . . . . . . . . | 318,537 |
| Average number in use in Pennsylvania during year, . . . . . . . | 23,982 |
| Dividend, 12 per cent on capital stock of $9,602,100.00 | |
| Proportion taxable in Pennsylvania, $\frac{23,982}{318,537}=$ | 722,922.00 |
| Tax, 6 mills (one half mill for each one per cent of dividend), . . . . . | $4,337.53 |
| Due commonwealth, . . . . . | $4,337.53 |

The corporation thus charged thereupon appealed from said settlement to the Court of Common Pleas of Dauphin county, specifying objections thereto which in substance were as follows:

1. The appellant is a Massachusetts corporation, and during the year mentioned in the settlement was not doing business in Pennsylvania, nor had it any capital employed in Pennsylvania in the name of any other corporation, association or person, or in any other manner; and it is therefore not liable for a tax upon capital stock under either the act of March 20, 1877, or that of June 7, 1879.

2. The 23,982 telephones used in the settlement as the measure of the tax alleged to be due, are not and were not operated by this company, but were hired from it, at its place of business in Boston, Massachusetts, by Pennsylvania corporations which use and operate them and are liable for and pay all taxes arising from their presence, use and operation in Pennsylvania.

3. The property of this company represented by its capital stock consists largely of patent rights and stocks and bonds of other corporations, and the 23,982 telephones aforesaid do not

Decision of Court below.

constitute more than $\frac{41,009}{23,905,200}$ parts of the company's property and assets and of the entire value of its capital stock; wherefore the company is in no event liable for a tax upon a larger proportion of its capital stock than $\frac{41,009}{23,905,200}$ thereof.

4. The settlement appealed from attempts to tax a part of the capital stock of the appellant, represented by stocks and bonds of other corporations, and patent rights, which property, being owned by a corporation of Massachusetts, has its taxable situs there; and this attempt is in violation of a necessary implication of the constitution of the United States, that each state shall have jurisdiction only over property within its limits.

5. The taxation by the state of patent rights granted by the United States, or of capital stock representing or represented by such patent rights, or royalties received therefrom, or of dividends out of such royalties, or of capital stock measured by such dividends, is in violation of the act of congress, approved July 8, 1870.

6. The acts of March 20, 1877, and June 7, 1879, if they authorize or impose any tax upon the capital stock representing or represented by such patent rights, or such royalties or dividends, impair the obligation of the contract contained or implied in the patents granted by the United States, and are therefore void, because in violation of § 10, article I. of the constitution of the United States.

7. The account appealed from is wholly erroneous and illegal, the appellant not being indebted for any part of the sum wherewith it stands charged.

The cause was submitted to the decision of the court, without a jury, under the act of April 22, 1874, P. L. 109, and after hearing on February 1, 1888, the court, SIMONTON, P. J., filed the following decision:

This case was tried by the court, as provided by the act of April 22, 1874.

The settlement appealed from is for tax on capital stock for the tax year ending the first Monday of November, 1884.

FINDINGS OF FACT.

1. The American Bell Telephone Company, defendant, is a corporation created in 1880, by the laws of the state of Massachusetts. Its principal office and place of business is in the

city of Boston. It is authorized by its charter to carry on the business of manufacturing, owning, selling, using, and licensing others to use, electric speaking telephones and other apparatus pertaining to the transmission of intelligence by electricity.

2. Defendant had no office, agent or place of business in Pennsylvania during the period embraced in this settlement. The business of telephoning was carried on in this state by Pennsylvania corporations, which were licensed by defendant to operate telephones, for which it holds letters patent granted by the United States; and it had also leased to said corporations the telephones used in said business, which it manufactured in the state of Massachusetts, and delivered to the licensees and lessees there, retaining the ownership of the telephones so leased.

3. The lessee corporations constructed and owned the necessary lines of wire, switches, switch-boards and other apparatus necessary to carry on said business, and they maintained their own offices, and employed the officers and agents needful to carry on said business, and furnished telephones and received the pay therefor from those who used them.

4. Defendant received from these Pennsylvania corporations, for the license under said letters patent and the lease of the telephones in most instances, a fixed rent and royalty upon and for each telephone furnished, which was charged and paid, whether the telephone was in actual use or not; in some cases the compensation, instead of a fixed sum, was a percentage on the gross receipts of the lessee. All the contracts for rent and royalties were made in Boston, and the payments therefor were made there.

5. The settlement appealed from charges defendant with a tax on that part of its capital stock which bears the same proportion to its whole capital stock that the number of telephones used in Pennsylvania, in the manner detailed above, during the period embraced in the settlement, bore to the whole number of its telephones anywhere in use.

The commonwealth claims that on these facts, defendant is liable to the tax on capital stock imposed by § 2 [4] of the act of June 7, 1879, P. L. 112, which enacts that "every company . . . . . doing business in this commonwealth, or having cap-

ital employed in this commonwealth, in the name of any other company or corporation association or associations, person or persons, in any other manner," shall be subject to a tax on its capital stock.

It is conceded on behalf of the defendant that if the facts bring it within the terms of the act, it is liable to the tax; but it is contended that they show that it is not "doing business" in this state, nor "having capital employed" in any of the ways which by the terms of the act create a liability to taxation.

There have heretofore been two cases before this court which have called for a consideration of the scope of the part of the act of 1879, above quoted. The first of these is Commonwealth v. Standard Oil Company, 101 Pa. 119. It is there said, 132: "The act of May 1, 1868, seems to use the phrase 'go into operation' as a synonym for 'doing business,' and this must mean more than purchasing supplies in the state through agents: P. L. 1868, 108. So the act of June 7, 1879," the act now in question, "enacts that no corporation chartered by this or any other state, and 'doing business' in this commonwealth, shall 'go into operation' without first making certain reports; thus making 'doing business' equivalent to 'going into operation;' and in § 16, 120, foreign corporations which do not 'invest and use' their capital in this state, are required to obtain and pay for a license, thus making 'invest and use its capital' another equivalent for 'doing business.'" The judgment based on this reasoning was, in that case, affirmed by the Supreme Court.

The second case was Commonwealth v. Conglomerate Mining Company, decided in 1884, and not reported. In that case this court held that a foreign mining company, which owned a lot of ground in the city of Philadelphia, not used for corporate purposes, for which it had paid $1,500, was not subject to the tax on capital stock imposed by the act of 1879, because it did not come within the scope of the language of § 2 [4], which we have quoted above, and under which the tax is claimed in this case. It was said in that case: "It by no means follows that because a foreign corporation owns property here, it is *merely* for that reason doing business here, or investing money or employing its capital here, in the sense intended by the act. . . .

Decision of Court below.

The legislature did not intend to tax upon their capital stock foreign corporations who exercise no corporate activity in this state, and who do not, in some degree, or in some manner, direct or indirect, carry out here the purposes for which they were created." This was the only point in the case, and it was affirmed by the Supreme Court.

We think the authority of these precedents requires us to hold that defendant is not liable to the tax claimed in this case. We cannot say that it was doing business in this state, or had capital employed in any manner here, during the period embraced in this settlement, merely because it had leased telephones, the legal title to which it retained, and charged royalties for the use of its patents, the rent and royalties being either a fixed sum, or a proportion of the gross receipts received by the lessees, and being payable and actually paid to defendant in Boston. It may be proper to say that defendant claims that it retains the ownership of the telephones, in order to have it in its power more effectually to prevent infringement of its rights under its patents. We have not found this as a fact, because it is a pure question of motive; nor do we regard it as a material element in the case. The mere ownership of property in the state, by a foreign corporation, does not render it liable to the tax on capital stock; it must be " doing business," or " having capital employed " in some manner; or it must " invest and use its capital " within the state. As said in the case last above cited, " it must be, in some manner and degree, exercising its corporate powers within the state."

The view we have taken above was held in the federal court in Ohio, in United States v. American Bell Teleph. Co., 29 Fed. Rep. 17.

For these reasons we have reached the following:

CONCLUSIONS OF LAW.

1. Defendant was not during the period embraced in the settlement appealed from, doing business or having its capital employed in any manner in this Commonwealth.[1]

2. Defendant is not liable to the tax claimed in this case, and cannot be held therefor, but is entitled to judgment in its favor in this case.[2]

We therefore direct judgment to be entered in favor of defendant unless exceptions be filed within the time limited.

Exceptions to Decision.

To the foregoing decision the commonwealth filed exceptions specifying that the court erred:

1. In not finding as matter of fact that the telephones of the defendant company were in use in Pennsylvania, pursuant to the provisions of contracts, the forms of which were set forth in an affidavit made by Williams R. Driver, and in not incorporating said contracts into its findings of fact.

—The forms of contracts here referred to were three in number, one being used for the leasing of telephones to be used in connection with a telephone exchange; another for leasing instruments to be used on lines connecting different exchange districts; and the third for leasing instruments to be used on private, club and social lines. In each of these forms the title to the telephones leased was reserved by the American Bell Telephone Company, and they specified with some detail the manner in which the instruments might be used; the kind of business the lessees were to permit to be transacted through them; the provisions to be inserted in the contracts to be made between the lessees and their customers, and reserved to the lessor the right, upon certain breaches of the contract, to enter and take possession of the leased telephones, to operate them and to collect rentals from sub-lessees in its own name, and the right to resort in its own name to all remedies, in law and equity, against sub-lessees for any misuse of the instruments leased.

2. In not finding that the original capital stock of the company was $7,350,000, which had been increased from time to time, so that it amounted during the tax year of 1884 to $9,602,100, and at the time of the finding to $10,000,000; and that upon said stock certain dividends had been declared.

3. In not finding that, under an agreement between said telephone company and the Western Union Telegraph Company, wires had been extended from telephone exchange offices to offices of said telegraph company and telephones placed in the latter, the telegraph company engaging to receive thereby messages for transmission over its lines; its profits consisting of its charges for transmitting such messages over its own lines; that of the telephone company consisting of a commission on such messages paid it by the telegraph company, and that of the company's operating telephone exchanges consist-

ing of a percentage of said commissions; that, in practice, the Pennsylvania companies, operating exchanges, collected these commissions from the telegraph company and remitted to the American Bell Telephone Company its proportion thereof, the aggregate of the sums thus received by the latter never exceeding in any one year $1,200; that, for the purpose of preventing any unauthorized use of said wires, they are owned by said telephone company, which may resume their possession and use in case of such unauthorized use, though it has in fact never yet done so in any case; that said connecting wires are in all cases very short, their cost for the whole of Pennsylvania not exceeding $200; that messages are received and transmitted at the telegraph offices, over the lines connecting between said offices and the exchange offices, by the clerks of the telegraph company, employed and paid by it, the defendant company paying no operating expenses; but it is provided that such clerks, for the purpose solely of defining the question of responsibility between the defendant telephone company, or its licensees, and the telegraph company, shall be the agents of the former company and subject to its rules and regulations.

4. In not finding that the defendant company leases telephones to be used in other states than Pennsylvania, and has relations to the telephone business carried on in other states in all respects similar to that carried on in Pennsylvania.

5. In not finding that the average number of telephones owned by the defendant company in 1884 was 318,537; in 1885, 332,764; and in 1886, 341,621; of which the average number leased to Pennsylvania corporations, was, in 1884, 23,982; in 1885, 25,493, and in 1886, 27,100.

6. In not finding that the gross receipts of the defendant company in the year 1884, 1885 and 1886, the proportions thereof received from rentals and royalties under the forms of contracts before mentioned, the gross receipts during said years from companies operating in Pennsylvania and the proportions thereof received as such rentals and royalties, amounted to certain sums specified.

7. In the first conclusion of law.[1]

8. In the second conclusion of law.[2]

9. In not entering judgment for the amount of tax claimed by the commonwealth.

Arguments.

These exceptions were subsequently disposed of as follows, SIMONTON, P. J.:

We find the matters stated in the first seven [six] exceptions to be true, but we consider them irrelevant.

All the exceptions are overruled, for the reasons given in the opinion heretofore filed, and judgment is directed to be entered in favor of defendant in accordance therewith.

Judgment having been entered in accordance with the direction of the court, the commonwealth thereupon took this appeal, specifying that the court erred:

1, 2. In its conclusions of law.[1] [2]

3. In not entering judgment for the amount claimed by the commonwealth.

*Mr. W. S. Kirkpatrick,* Attorney-General, and *Mr. John F. Sanderson,* Deputy Attorney-General, for the appellant:

1. The business which the American Bell Telephone Company is authorized to carry on, is the manufacturing, owning, selling, using and licensing others to use, telephones and other apparatus and appliances pertaining to the transmission of intelligence by electricity. It sells nothing. Its contracts for the use of telephones are nominally, and for many purposes wholly, with its licensees; but they are made for the purpose of establishing a business in which sub-licensees shall use telephones, and their ultimate object is a profit to the company through such use.

2. With each sub-licensee this company has in its own name contract relations of a permanent nature, whereby it is directly given a measure of control over the use of each telephone in the hands of the sub-licensee, rights of entry to itself and its agents, and legal remedies to be pursued in its own name against such sub-licensees, and by such means it secures the due performance by them of their contracts. It had, therefore, in the year 1884, business and contract relations with 23,982 persons in Pennsylvania, who were lessees of its property. It is submitted, in view of the form of the contracts it enters into, that it does business and has capital employed in Pennsylvania.

3. As to the basis of apportioning the tax for which the defendant is liable, the principle we contend for is sustained by

what was said by Judge SIMONTON in the court below in Western U. Tel. Co.'s App., 41 Leg. Int. 194, with reference to the basis of apportioning tax upon the stock of that company, and by a similar ruling of the Supreme Court of the United States in Western U. Tel. Co. v. Massachusetts, 125 U. S. 535. As in those cases the tax was measured by the proportion of the company's miles of wire in use in the state, so in the present case it must be based upon the proportionate number of telephones here in use.

*Mr. Wayne MacVeagh, Mr. M. E. Olmstead and Mr. S. B. Huey*, for the appellee :

1. During the period for which tax is claimed in this suit, the defendant company had in Pennsylvania, neither office, officer, agent, nor employee; nor was there in the state a single dollar's worth of property over which it had any present right of possession, ownership, or control whatsoever. The business between it and its Pennsylvania licensees was all transacted in Boston. It came into no contract relation with the persons using the telephones in Pennsylvania, and they were not its customers, but the customers of the Pennsylvania companies.

2. In any event, however, a foreign corporation does not become taxable upon its capital stock in this state merely because it has business relations with persons resident here. It may supply goods to people in Pennsylvania, and thus have business relations with them, without " doing business " in this state, within the meaning of the tax laws : United States v. Am. Bell Teleph. Co., 29 Fed. Rep. 17. In that case it was ruled that this company, having entered into contracts with Ohio corporations identical with the contracts now before this court, did not thereby engage in business there, so as to make itself amenable to service.

3. Nor does this company have capital employed in this state in the name of any other company or person. It owns stock in some of the Pennsylvania corporations, but this is an investment in its own name, and the situs of the investment is the domicil of the owner. The stock of a corporation is a different thing from shares of stock. As owner of shares of stock in Pennsylvania corporations, the defendant is taxable in its for-

eign domicil, and is not taxable here : Commonwealth v. Standard Oil Co., 101 Pa. 119. Nor can the capital originally put into the telephones in use here be said to be employed in the name of another.

4. It is submitted, also, that, according to the true meaning of the acts of assembly, the company does not have "capital employed" here "in any other manner." The purpose of this clause in § 4, act of June 7, 1879, P. L. 112, was to tax property brought into Pennsylvania by a foreign corporation in the transaction of its business : Commonwealth v. Standard Oil Co., 101 Pa. 119, 146. Two things must concur to make such a tax valid : (1) the capital must in fact and in law be employed here, by engaging in business either directly or through some representative; and (2) the property representing the capital must, in fact and in law, be the present property and possession of the corporation sought to be taxed.

5. The telephones in use in Pennsylvania do not answer the requirements of this rule. Their physical situs is not necessarily the situs of the capital used in constructing them. And even if it were, this company has not such ownership of them as would subject it to taxation, having neither the possession nor present right of possession : Mayor v. Canton Co., 63 Md. 218 ; Burroughs on Taxation, 223; United States v. Telephone Co., 29 Fed. Rep. 17. But even the direct and unqualified ownership of property in Pennsylvania by a foreign corporation, does not of itself subject the capital stock to taxation there ; there must be both an investment and use of capital : Commonwealth v. Conglomerate Mining Co., decided by this court October 6, 1884, and not reported.

6. As to the basis of apportioning the tax, if any were due, it must be remembered that the claim of the commonwealth, though nominally for a tax on capital stock, is really for a tax upon property and assets brought into this state : Commonwealth v. Standard Oil Co., 101 Pa. 119. The proper way to apportion would be to determine the actual value of the whole property, and the actual value of that part of it in Pennsylvania : Commonwealth v. Standard Oil Co., supra ; Commonwealth v. L. & Z. Mining Co., 5 Pa. C. C. R. 89, note ; Commonwealth v. Dredging Co., 122 Pa. 386. Railroad, canal and telegraph lines, situated partly within and partly without the state, are

an exception, because of the impossibility of making a separate valuation. But these telephones not being connected together except by wires belonging to other parties, and these wires not being connected with telephones in other states, this case is not within the exception. The case of the Western U. Tel. Co. v. Massachusetts, 125 U. S. 535, is not in point, both for the reason just stated, and because it apparently involved a franchise or business tax.

OPINION, MR. CHIEF JUSTICE PAXSON:

This was an attempt on the part of the commonwealth to tax the capital stock of the American Bell Telephone Company, to the extent that its capital was employed in "doing business within this commonwealth." Under the facts as found by the court below, we are very clear the commonwealth is not entitled to collect such tax. The company is a corporation created by the laws of the state of Massachusetts. Its principal office or place of business is in the city of Boston. It has no office, agent, or place of business in this state. All the contracts for rent and royalty of telephones were made in Boston, and the payments therefor were made there. It leases to certain Pennsylvania corporations the use of the telephones, and furnishes the instruments, which remain the property of the company, and are to be paid for whether used or not. The Pennsylvania corporations carry on the business here. They construct and own the necessary lines of wires, switches, switch-boards, and other apparatus necessary to carry on the business. They maintain their own offices, and employ and pay the officers and agents needed to carry it on. The telephone company transacts no business here; it has no part of its capital or property here, except the instruments in question, which, as before observed, are leased to Pennsylvania corporations, with a license to use the same. Under such state of facts it would seem clear that the telephone company could not be taxed as doing business within this state.

It was contended, however, on the part of the common wealth, that, because the company had in its contract with the Pennsylvania corporations, reserved a certain power of control over telephones leased to them, and might, upon certain breaches of said contracts, enter upon, take possession of, and operate

Syllabus.

said telephones, the said company was doing business here, and became liable to the tax. There is a wide distinction, however, between the right to do business and actually doing it. It may be that should said company proceed to enforce its rights under these contracts, and after taking possession of the telephones, operate them, it would be doing business here. But that contingency has not arrived. It is to be observed that this was not a tax upon the instruments owned by the company, and operated here under license. The instruments as such are perhaps within the taxing power of the commonwealth, for the reason that they are here and within her jurisdiction. It matters not to the state to whom they belong. But the state has not laid such tax; on the contrary, it is a tax upon capital stock, and as the company transacts no business within the state, no portion of its capital is here in point of fact, or by construction of law. Authorities are scarcely needed for so plain a proposition. It is sufficient to refer to Commonwealth v. Standard Oil Company, 101 Pa. 119.

Judgment affirmed.

