## REFRIGERATION DISCOUNT CORPORATION v. METZGER, Secretary of Revenue, et al.
### No. 1019.

District Court, M. D. Pennsylvania.
May 8, 1935.

Charles H. Hollinger, of Harrisburg, Pa., Wiley, Streeter, Smith & Ford, of Detroit, Mich., and Smith, Buchanan, Scott & Gordon, of Pittsburgh, Pa., for plaintiff.

William A. Schnader, Atty. Gen., and Philip S. Moyer, Deputy Atty. Gen., for defendants.

Before THOMPSON, Circuit Judge, and JOHNSON and WATSON, District Judges.

WATSON, District Judge.

The plaintiff, a subsidiary of the Kelvinator Corporation of Detroit, is a Michigan corporation with its principal office in Detroit, Mich., engaged in the business of financing the purchase and sale of refrigerators, refrigeration equipment, etc., and dealing in all forms of evidences of indebtedness and securities.

The plaintiff, during the years of 1928, 1929, and 1930, financed the sale of refrigerators and refrigeration equipment by means of bailment leases and trust receipts.

Conditional sale contracts were used for a short period in 1928.

The commonwealth of Pennsylvania settled bonus and capital stock taxes on the plaintiff for the years 1928, 1929, and 1930, and plaintiff brought this bill in equity to restrain the defendants from collecting said taxes.

The question presented is whether the plaintiff was doing business in the commonwealth of Pennsylvania or had its capital employed therein within the meaning of the Pennsylvania Act of Assembly of June 1, 1889, P. L. 420, as amended and Act May 8, 1901, P. L. 150 (72 PS §§ 1851–1853), which impose the taxes in question.

The plaintiff contends that it did not do business in Pennsylvania. The defendants contend that the financing of refrigerators on the "floor plan" by means of trust receipts was in itself doing business. This contention in regard to the "floor plan" is particularly stressed by the defendants who set forth the "floor plan" in detail in their requests for findings of fact Nos. 14 and 15.

The so-called "floor plan" of financing the sale of refrigerators is substantially as follows: When a dealer desires to obtain refrigerators, he places his order with the distributor. The distributor determines whether the plaintiff will finance the order. When the plaintiff advises the distributor that it will finance the order, the distributor executes on a printed form sent by the plaintiff either at the time, or previously, a bill of sale to the plaintiff of the merchandise involved. The distributor then ships the merchandise to the dealer, and forwards to a bank in the town to which the goods are shipped, the following printed forms of the plaintiff, which are marked Exhibit D in plaintiff's statement of claim; instructions to bank, trust receipt, promissory note, instructions, and record of payment, together with the bill of lading and a sight draft for the amount of cash to be paid. The instructions to the bank contain the following quotation: "Please act for the Refrigeration Discount Corporation in the following transaction." The bank is instructed to notify the drawee, who is the dealer, to call at the bank and have him pay the sight draft, date and sign the trust receipt which is to be witnessed by the bank, date and sign the promissory note, and, upon execution of these, the bank is to deliver to the drawee the bill of lading together with the printed instructions to the dealer, return to the plaintiff the promissory note and trust receipt, and remit to the drawer of the sight draft the proceeds thereof. The trust receipt, which is signed by the dealer, acknowledges receipt from the plaintiff of the refrigerators, and also acknowledges that they are the property of the plaintiff and agrees to hold the same and to return to the plaintiff upon demand, and agrees not to dispose of the same until after payment of the amounts shown in release price column.

The method pursued in financing the sale of refrigerators by means of bailment leases and conditional sales contracts were about the same in both cases, and were carried on substantially in the following manner: When prospective purchaser desires to buy a refrigerator on the financing plan, the dealer secures his financial statement which is sent to the plaintiff in Detroit. If the plaintiff approves the credit statement, it notifies the dealer, who has the prospect sign a conditional sale contract or a bailment lease. The prospect signs as lessee or conditional vendee, and the dealer as lessor or conditional vendor. The dealer then executes a guaranty and an assignment to the plaintiff, and the lease or conditional sale contract is forwarded to the plaintiff at Detroit, Mich., for approval.

Whether a corporation is doing business is a question to be decided upon the facts before the court. St. Louis S. W. R. Co. v. Alexander, 227 U. S. 218, 33 S. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 77; Von Baumback v. Sargent Land Co., 242 U. S. 503, 37 S. Ct. 201, 61 L. Ed. 460; Commonwealth v. Wilkes-Barre & Hazelton R. R. Co., 251 Pa. 6, 95 A. 915, 916. In the latter case, Mr. Justice Mestrezat said: "* * * the question whether or not the company is doing business within the state is one of fact not necessarily depending solely on single acts, or on the effect of single acts, but on the effect of all the combined acts which it may perform here." Doing business or employing capital in Pennsylvania are equivalent terms. Com. v. Lycoming Improvement Co., 6 Dauphin County Rep. 103; Com. v. Tonopah Mining Co., 12 Dauphin County Rep. 91. Therefore, unless a foreign corporation is doing business in Pennsylvania, it is not subject to taxation under the statutes in question. Com. v. Bell Tel. Co., 129 Pa. 217, 18 A. 122.

The plaintiff relies mainly on the cases of People's Building, Loan & Saving Ass'n

v. Berlin, 201 Pa. 1, 50 A. 308, 88 Am. St. Rep. 764, and Finance & Guaranty Co. v. West Auburn Creamery Co., 69 Pa. Super. 261, to show that it did not do business in Pennsylvania. Those cases are distinguishable from the case at bar, in that no title to tangible property passed there, while in this case the plaintiff secured title to the refrigerators. The plaintiff's further contention, that the title which it held was a mere security interest which is not taxable, is untenable. Commonwealth v. Motors Mortgage Corporation, 297 Pa. 468, 147 A. 98.

It appears that the effect of all the combined acts performed by or on behalf of the plaintiff under the "floor plan" was to employ or use its capital in this state in effecting its corporate purpose, to wit, "to finance the purchase and sale of refrigerators." Under the "floor plan" the financing contract is completed in Pennsylvania. In the first instance the distributor executes a bill of sale to the plaintiff. The plaintiff then has a bank in Pennsylvania act for it to secure payment of the sight draft and the execution of the trust receipt and promissory note by the dealer. The trust receipt and promissory note are made out to the plaintiff, and nothing further remains to be done to complete the transaction. An assignment thereafter of these papers to the plaintiff to enable it to "accept" them at Detroit would be nothing more than a fiction. Thus the acts performed in Pennsylvania under the floor plan were the performance of the function and business of the corporation and not merely incidentals to its corporate existence. Commonwealth v. Andrews and Hitchcock Iron Company, 20 Dauphin County Rep. 143; Commonwealth v. Tonopah Mining Company, 12 Dauphin County Rep. 95; Commonwealth v. Wilkes-Barre & Hazelton R. R. Co., supra.

Under the bailment lease and conditional sale contract plans, the financing contracts were completed at Detroit, Mich., where the assignments were accepted. The plaintiff did not maintain an office or salesmen in Pennsylvania. The plaintiff, therefore, did not do business in Pennsylvania under the bailment leases and conditional sales contracts within the meaning of the taxing statutes. In Commonwealth v. National Cash Register Co., 23 Dauphin County Rep. 251, 253, affirmed in 271 Pa. 406, 117 A. 439, Judge Sadler said of a like situation: "If the machines had been sold on order accepted in Dayton, Ohio, then the ownership would have there passed, and no taxation on such value would have been imposed." Defendants, in their brief, practically concede that the plaintiff did not do business in Pennsylvania under the bailment leases and conditional sales contracts because of this fact.

Notwithstanding the fact that defendants practically concede that plaintiff did not do business in Pennsylvania under the bailment leases and conditional sales contracts, they contend that if it did do business in Pennsylvania under the "floor plan" it was liable for taxes based on the value of refrigerators to which it held title under the trust receipts, bailment leases, and conditional sales contracts. In support of this proposition, they rely on the case of Commonwealth v. Motors Mortgage Corporation, 297 Pa. 468, 147 A. 98. In this case, however, the Motors Mortgage Corporation was admittedly doing business in Pennsylvania by virtue of bailment leases, and consequently was held liable for taxes based on the value of all its property held in Pennsylvania under bailment leases. That case does not hold that a foreign corporation doing business in Pennsylvania is taxable on that part of its property held in Pennsylvania, but not employed therein in affecting its corporate purpose.

Having held that the plaintiff was doing business under the "floor plan" during the years 1928, 1929, and 1930, but not under the conditional sales contracts and bailment leases, the court is of the opinion that the plaintiff is liable only for the capital stock tax for the years 1928, 1929, and 1930 upon the value of the capital stock as represented by the value of refrigerators to which it held title under the trust receipts; and also liable for bonus on said value and upon the subsequent increases in value of capital employed in 1929 and 1930.

Findings of fact and conclusions of law have been submitted. They are answered and filed herewith and made a part of this opinion.

A decree in accordance with this opinion may be submitted.