## Commonwealth v. Reading & Southwestern Street Ry. Co.

*Frank A. Sinon,* Deputy Attorney General, for Commonwealth.

*Emanual Kraus,* for defendant.

HARGEST, P. J., August 30, 1943.—This case is an appeal from the settlement of a corporate net income tax for the year 1939, upon $15,600, amounting to $1,092. The case was tried without the intervention of a jury, and a stipulation as to facts was filed. We have also answered the defendant's requests for findings of fact and conclusions of law.

### Facts

The Reading & Southwestern Street Railway Company was incorporated in 1890 to operate a street railway. In 1901 it executed a lease for a term of 999 years, whereby its street railway system, its franchise, and all its rights and property of every sort were leased to the United Traction Company (now Reading Street Railway Company). Under this lease defendant company received annually $15,600, plus the annual interest on its bonds, the payment of all tax liabilities assessed against it, and an annual sum of $50 used for maintaining its corporate existence. The annual rental was paid directly by the lessee to the stockholders of

defendant company, and the interest due on the bonds was paid directly by the lessee to the holders of such bonds. The company had no other income. It owned no other property. During the tax year it was not engaged in the performance of any of its corporate powers except those routine acts necessary to maintain its corporate existence.

### Questions involved

The questions involved are:

1. Whether the amendments to the Corporate Net Income Tax Act of May 16, 1935, P. L. 208, 72 PS §3420*a*, made by the Corporate Net Income Tax Act of May 5, 1939, P. L. 64, 72 PS §3420*a*-3420*n*, imposed net income tax upon defendant company for the year 1939.

2. If the language of the amending Act of 1939 would operate to impose the tax, does the title of the act give sufficient notice thereof, since no such tax could have been imposed under the original Act of May 16, 1935?

### The statute

The original Act of May 16, 1935, P. L. 208, imposed an excise tax, known as the corporate net income tax, for the two calendar years 1935 and 1936, or for the two fiscal years ending in 1936 and 1937.

Section 3, imposing the tax, provides, in part:

"Every corporation shall be subject to, and shall pay for the privilege of doing business in this Commonwealth, a State excise tax at the rate of six per centum per annum upon each dollar of net income of such corporation."

The Act of April 8, 1937, P. L. 227, is entitled "An Act to reënact and amend the title and the act . . . of 1935," and provides that the effective date shall be for the calendar years 1935, 1936, 1937, and 1938, and for the fiscal years ending in 1936, 1937, 1938, and 1939.

The Act of 1939 amended section 3 by providing:

"Every corporation shall be subject to, and shall pay for the privilege of doing business in this Commonwealth, *or having capital or property employed or used in this Commonwealth, by or in the name of itself, or any person, partnership, association, limited partnership, joint-stock association, or corporation,* a State excise tax . . ." (Italics supplied.)

1. Does the addition of the words just above italicized have the effect of imposing a tax on any capital or property which is rented and for which a rental in bulk is paid and which is not otherwise employed or used in this Commonwealth by the defendant, as well as a tax for the privilege of doing business in this Commonwealth?

In the case of Commonwealth v. Repplier Coal Co., 53 Dauph. 191, 198, we said:

"In approaching these questions, it must be remembered that this is a taxing statute which must be strictly construed. We are not dealing with exemptions, as the Commonwealth has suggested, but with the essential right to the tax. Any doubt or uncertainty as to the imposition of the tax must be resolved in favor of the taxpayer. Commonwealth v. Chester County Light & Power Co., 48 Dauph. 1, 5; Commonwealth v. Quaker City Cab Co., 29 Dauph. 90, 287 Pa. 161, 277 U. S. 389; Commonwealth v. Philadelphia Rapid Transit Co., 287 Pa. 190, 196; Gilberton Borough School District v. Morris, 290 Pa. 7; Krause's Est., 325 Pa. 479; Arbuckle's Est., 324 Pa. 501; Barber's Est., 304 Pa. 235, 240. The words imposing the tax should be clear and unambiguous (Commonwealth v. P. W. & P. Co., 271 Pa. 456, 458) ; nor can words be extended by implication. Gould v. Gould, 245 U. S. 151, 153; United States v. Merriam, 263 U. S. 179, 188; Commonwealth v. Philadelphia Rapid Transit Co., supra."

See also Scranton v. O'Malley Manufacturing Co., 341 Pa. 200, 204, Leopold Tax Assessment Case, 118

Pa. Superior Ct. 158, and Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 58.

Section 33 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §533, provides, inter alia:

". . . technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this act, shall be construed according to such peculiar and appropriate meaning or definition."

The legislature of 1939, in reënacting and amending the Act of 1935, changed the law in four specific instances in addition to the language added to section 3. The language added to section 3, which had theretofore imposed an excise tax on the privilege of doing business, is "or having capital or property employed or used in this Commonwealth."

These words make section 3 of the Act of 1939 identical with section 2 of the Act of 1935, which defined "corporation" to be "A corporation having capital stock . . . doing business in this Commonwealth, or having capital or property employed or used in this Commonwealth . . ." Section 2 of the Act of 1935 was unchanged.

Section 2 of the Act of June 7, 1879, P. L. 112, is identical with section 20 of the Act of June 1, 1889, P. L. 420, imposing a tax on capital stock, except that in the latter act the words "or property" are added after the word "capital". So that practically since the Acts of 1879 and 1889, and every amendment to the latter, to and including the Act of April 8, 1937, P. L. 239, the corporations required to make report for the imposition of capital stock tax are defined as "every corporation . . . doing business in and liable to taxation within this Commonwealth, or having capital or property employed or used in this Commonwealth."

From the earliest interpretation of these acts down to the present, all the cases have uniformly held that "doing business in this Commonwealth" and "having

property employed or used in this Commonwealth" are equivalent terms: Commonwealth v. Conglomerate Mining Co., 1 Dauph. 85 (1884) ; Commonwealth v. American Bell Telephone Co., 129 Pa. 217 (1889) ; Commonwealth v. Tonopah Mining Co., 12 Dauph. 91, 94 (1909) ; Refrigeration Discount Corp. v. Metzger, etc., et al., 10 Fed. Supp. 748 (1935).

In the Conglomerate Mining Company case the question was whether the corporation was subject to a capital stock tax under the Act of 1879. The company conducted operations in Michigan but maintained an office and owned real estate located in Philadelphia. This court said (p. 89) :

"It by no means follows that because a foreign corporation owns property here, it is, merely for that reason, doing business here, or investing, using or employing its capital here, in the sense intended by the act. . . . Judge Simonton has pointed out, in the case of the *Standard Oil Company* [101 Pa. 119], that 'doing business,' the 'investment and use of capital,' and 'going into operation,' are employed in the Act of 1879 as substantially equivalent terms, and we do not doubt that this suggests the true answer to the argument now made. The legislature did not intend to tax upon their capital stock foreign corporations who exercise no corporate activity in this state, who did not, in some degree or in some manner, direct or indirect, carry out here the purposes for which they were created. What is meant by going into operation, doing business, investing, using or employing capital, when that language is used about a corporation? *Certainly, as it seems to us, it can only mean doing the business it has undertaken, using and employing its capital for that purpose, conducting the operation its charter authorizes.*" (Italics supplied.)

In Commonwealth v. American Bell Telephone Co., 129 Pa. 217, the issue was also whether the corporation was taxable under the Act of 1879, which imposed the

capital stock tax in the same language "upon every company . . . doing business in this Commonwealth, or having capital employed in this Commonwealth." The telephone company owned a large number of telephones which it leased to Pennsylvania corporations and which were used here by such corporations, for which they paid a rental. Judge Simonton, in concluding that merely leasing the telephones, to which a corporation had the legal title, was not using capital in the State, said, referring to the Conglomerate Mining Company case (p. 222):

"The mere ownership of property in the state, by a foreign corporation, does not render it liable to the tax on capital stock; it must be 'doing business,' or 'having capital employed' in some manner; or it must 'invest and use its capital' within the state. As said in the case last above cited [Conglomerate Mining Company case], *'it must be, in some manner and degree, exercising its corporate powers within the state.'* " (Italics supplied.)

The Supreme Court, in affirming, said (p. 228):

"The telephone company transacts no business here; it has no part of its capital or property here, except the instruments in question, which, as before observed, are leased to Pennsylvania corporations, with a license to use the same. Under such state of facts it would seem clear that the telephone company could not be taxed as doing business within this state."

In Commonwealth v. Tonopah Mining Company, 12 Dauph. 95, the corporation maintained a Philadelphia office while carrying on a mining business in Nevada. It had an average bank account of $400,000 in Philadelphia, employed several persons there, and rented a suite of rooms. It was held not to be doing business within the language which subjected to tax a corporation "doing business . . . or having capital or property employed or used in this Commonwealth." The court said (p. 99):

*"The purpose for which it was chartered was to do a mining business, which it carried on in another state, and none of which business was transacted, or any of its capital or property employed or used to that end in this state at all."* (Italics supplied.)

See also Commonwealth v. The American Sugar Refining Co., 53 Dauph. 219.

The emphasis in all these cases is that the property must be used to carry out the charter powers in order to become taxable.

Since the legislature, by the Act of 1935, defined corporations liable to the corporate net income tax by copying the definition taken from the Capital Stock Tax Act of 1889 to include "every corporation . . . doing business in this Commonwealth, or having capital or property employed or used in this Commonwealth", did the legislature of 1939, by merely adding to section 3 the words "or having capital employed or used in this Commonwealth", intend to enlarge the class of corporations subject to the corporate net income tax?

It is the settled rule of construction that when the language of a former statute is repeated in a later statute it should be construed as in the earlier statute: Buhl's Estate, 300 Pa. 29.

Where the terms and words employed in an act at the time of their enactment acquired a definite meaning as a result of judicial interpretation in previous statutes, they should be given a similar interpretation in the new statute: Commonwealth v. Standard Oil Co., 101 Pa. 119; Koontz's Admr. v. Howsare, 100 Pa. 506; Commonwealth v. Bailey, Banks & Biddle Co., 20 Pa. Superior Ct. 210.

The legislature is presumed to be cognizant of the court's interpretation of a statute, and when it uses identical language in a subsequent statute it obviously intends the meaning which the courts have placed thereon: Barnes Foundation v. Keely et al., 314 Pa.

112; Desh's Estate, 321 Pa. 286; Free's Appeal, 301 Pa. 82.

The Statutory Construction Act of May 28, 1937, P. L. 1019, provides in section 52(4) :

"That when a court of last resort has construed the language used in a law, the Legislature in subsequent laws on the same subject matter intend the same construction to be placed upon such language . . ."

Applying this principle of law, the legislature must be presumed to have known that the words "doing business in this Commonwealth" were tantamount to saying "having capital or property employed or used in this Commonwealth"; and, the phrases meaning the same, could it be said that the legislature intended, by the addition of those words, to make them mean something else? Or did the legislature simply intend to incorporate in section 3 the definition of "corporation" which had been originally contained in the Act of 1935 and carried through into the amending Acts of 1937 and 1939?

The Commonwealth contends that we must do this because this court, in the case of Commonwealth v. Delaware River Railroad & Bridge Co., 48 Dauph. 18, held that the Act of 1935 would not apply to a corporation in the same situation as defendant here; that the Delaware River Railroad & Bridge Company case was decided January 9, 1939, and the legislature, by the Act of 1939, approved on May 5, 1939, intended to correct and meet that situation in the Delaware case.

The facts were very similar. In that case defendant company operated a railroad two miles in Pennsylvania and 7.52 miles in New Jersey, which it leased to the Pennsylvania Railroad Company for a period of 999 years, and the sole income of the defendant there, as in the instant case, was the rental paid under the lease. The court held (p. 30) :

"The Delaware River Railroad & Bridge Company was not exercising the privilege of doing business, nor

did it have property or capital employed in Pennsylvania during the year 1935 so as to bring it within the provisions of and subject it to the Corporate Net Income Tax imposed by the Act of May 16, 1935, P. L. 208."

If we adopt the Commonwealth's contention we must ignore the settled rule of construction to which we have referred. The legislature is presumed to have known the construction placed upon the Act of 1935 by the court, which, in the case last mentioned, is twofold, namely, that a corporation in the situation of the defendant in this case is (a) not doing business in Pennsylvania, and (b) does not have property or capital employed in Pennsylvania. The legislature must, therefore, be presumed to have known that the use of the words in the amendment, "having capital or property employed or used in this Commonwealth", would not bring such a corporation within the statute.

Moreover, we must ignore the other settled rule of construction, that the right to tax must be clear, and any doubt concerning the right must be resolved in favor of the taxpayer.

We definitely conclude that the words "having capital or property employed or used in this Commonwealth" mean that the capital or property must be employed or used in furtherance of the charter purposes. In the instant case there was less use of the property than in the cases to which we have heretofore referred. In the instant case the company did not even distribute its receipts as a company. The lessee paid the rental directly to the stockholders of defendant company, and paid the interest on the bonds directly to the bondholders of that company. The only money actually used by defendant company was the sum necessary to maintain its corporate existence.

An examination both of the title and of the amending act shows that there were four important particulars in which the act was amended. This act imposed an emergency tax which was extended for two more years.

We are rather of opinion that the four reasons for the amendment, set out in the title, express the legislative intention, and that it did not intend to disregard the legal principles to which we have referred. It could readily have expressed such intention in plain language concerning which there would have been no doubt. The Commonwealth itself suggests that the adding of the words "for rent", so as to make the last phrase read "used in this Commonwealth for rent", would have accomplished the purpose.

2. The defendant is impaled on another horn of the dilemma. The title of the amending Act of 1939 is:

"An Act to reënact and amend the title and the act [of 1935, quoting it in full] . . . by extending the provisions of the act for a further limited period of time; changing the method of ascertaining the net income of insurance companies; exempting title insurance companies; and making certain changes in the method of ascertaining taxable net income, and in the procedure for the collection and adjustment of the tax."

The Commonwealth makes the rather startling assertion that the Act of 1939 "is not an amendment to any act". The title and the act show it to be an amendment, but whether it is an original act or an amendment the same principles as to titles apply.

A title is defective when it is "so particular as to inferentially exclude from its scope any items inadvertently omitted": Commonwealth v. Stofcheck, 322 Pa. 513, 517.

Article III, sec. 3, of the Constitution requires that the subject "shall be clearly expressed in its title". And in In re Road in Borough of Phoenixville, 109 Pa. 44, 49, it is said: "To be 'clearly expressed' certainly does not mean something which is dubious and therefore not clearly expressed."

In Sugar Notch Borough, 192 Pa. 349, 353, it is said:

"Where a general title, sufficient to cover all the provisions of an act, is followed by specifications of the

particular branches of the subject with which it proposes to deal, the scope of the act is not limited nor the validity of the title impaired except as to such portions of the general subject as legislators and others would naturally and reasonably be led by the qualifying words to suppose would not be affected by the act. This is the rule established by all our cases. It is an application of the maxim expressio unius exclusio alterius. The express enumeration of the specific subjects must be affirmatively misleading as to the intent to exclude others, or the title will not be made invalid by it."

An examination of this title shows that the act is amended in four specific ways: (1) Extending the provisions of the act; (2) changing the method of ascertaining the net income of insurance companies; (3) exempting title insurance companies; (4) making certain changes in the method of ascertaining taxable net income and in the procedure for the collection and adjustment of the tax. No indication is given that it is amended in any other way.

Certainly "legislators and others would naturally and reasonably be led by the qualifying words to suppose" that there were no other amendments: Goebeler v. Wilhelm, 17 Pa. Superior Ct. 432, 443; Commonwealth v. Luckey, 31 Pa. Superior Ct. 441; Frye v. Lanning, 10 D. & C. 727.

We are of opinion that the amending Act of 1939 does not sufficiently disclose the legislative intention to include another class of corporations as taxable within its terms which were not included in the Act of 1935, and that therefore the act cannot be construed as operating upon such class. But even if the legislature did so intend, no such intention is indicated in the title.

### Conclusions of law

1. The Reading & Southwestern Street Railway Company was not doing business in this Commonwealth, nor did it have capital or property employed

or used here during the year 1939, within the meaning of the Act of May 16, 1935, P. L. 208, as amended by the Act of May 5, 1939, P. L. 64.

2. Defendant, by virtue of leasing its franchise and properties to another corporation for a long period of years, had ceased the performance of its corporate powers and functions to such an extent that it was not doing business or employing capital so as to make it liable for corporate net income tax, under said acts.

3. "Doing business in this Commonwealth" and "having capital and property employed or used in this Commonwealth" are synonymous and equivalent terms when used in taxing statutes, and the addition of the latter phrase made in the Act of 1935 by the Act of 1939 did not extend and broaden the scope of section 3 of the Act of 1935.

4. By the amending Act of 1939, the legislature did not intend to extend the corporate net income tax liability so as to include a class of taxables like defendant company, which exercised no charter powers and was theretofore exempt.

5. The mere performance of such ministerial acts by defendant as are necessary to keep alive its corporate existence was not doing business or having capital employed or used, within the meaning of the Act of 1935, as amended by the Act of 1939.

6. The title of the amendatory act enumerating the particulars in which the Act of 1935 is amended is not sufficient to give notice of a further amendment to section 3 so as to impose liability upon a new class of corporations theretofore exempt.

### Judgment

And now, August 30, 1943, judgment is hereby directed to be entered against the Commonwealth of Pennsylvania and in favor of defendant, unless exceptions are filed within the time limited by law.